## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| STMicroelectronics, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:03-CV-276 |
| | ) | |
| v. | ) | Judge Leonard E. Davis |
| | ) | |
| Motorola, Inc., | ) | |
| | ) | |
| Defendant, Counterclaim Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STMicroelectronics, N.V., and | ) | |
| STMicroelectronics, Inc., | ) | |
| | ) | |
| Counterclaim Defendants | ) | |

### MOTOROLA INC.'S RESPONSE TO STMICROELECTRONICS, N.V. AND STMICROELECTRONICS, INC.'S MOTION TO ENFORCE MOTOROLA INC.'S COMPLIANCE WITH PATENT RULE 3-1

Because they put STM[1] on notice of the products and processes that Motorola alleges infringe the Vaglica[2] and Tobin[3] patents, Motorola's Preliminary Infringement Contentions[4] comply with Patent Rule 3-1. Specifically, Motorola has identified STM products that infringe the Vaglica patent by product number, product family and/or specific description, and has provided element-by-element claim chart comparisons for these products. As for the Tobin patent, as explained below, much of the information necessary for Motorola to perfect its allegations is within the exclusive possession or control of STM or its vendors. Nevertheless,

---

[1] Defendants STMicroelectronics, N.V. and STMicroelectronics, Inc. are herein referred to collectively as "STM."

[2] U.S. Patent No. 5,084,814, issued to John Vaglica ("the Vaglica patent").

[3] U.S. Patent No. 4,548,654, issued to Philip Tobin ("the Tobin patent").

[4] Motorola's Disclosure of Asserted Claims and Preliminary Infringement Contentions, are referred to herein as Motorola's "Preliminary Infringement Contentions."

Motorola has provided its theory of infringement of the Tobin patent with sufficient specificity to notify STM of the identity of these products and processes.

STM's Motion is nothing more than a discovery tactic by which STM attempts to improperly avoid the discovery that is contemplated by the Patent Rules and the Federal Rules of Civil Procedure and which is necessary for Motorola to discover the full extent of STM's infringing activities.[5]  Accordingly, Motorola respectfully requests that the Court deny STM's motion.[6]

## I.    FACTUAL BACKGROUND

On October 31, 2003, before any discovery was exchanged, Motorola served STM with Motorola's Preliminary Infringement Contentions pursuant to the Court's Docket Control Order and Patent Rule 3-1.  These contentions provided Motorola's preliminary infringement positions with respect to, *inter alia*, the two patents at issue in STM's motion:  the Vaglica and Tobin patents, including identifying STM products and processes that infringe those patents.  STM was thus obligated, pursuant to the Patent Rules and Federal Rules of Civil Procedure, to produce information regarding the accused products and processes.

To assist STM in satisfying its discovery obligations, on November 26, 2003, Motorola sent letters to STM identifying categories of documents that STM was obligated to produce pursuant to the discovery rules.[7]  Next, in accordance with the Patent Rules, on December 1, 2003, the parties exchanged documents regarding accused products.  STM, however, did not produce a <u>single</u> document regarding STM products accused of infringing the Vaglica or Tobin

---

[5] The Patent Rules expressly reject this tactic and state that "it shall not be a legitimate ground for . . . declining to provide information otherwise required to be disclosed pursuant to FRCivP 26(a)(1) that the . . . disclosure requirement is premature in light of, or otherwise conflicts with, these Patent Rules."  Patent Rule 2-5.

[6] Because STM continues to refuse to produce relevant discovery, Motorola will move to compel STM to comply with its discovery obligations.

[7] *See* November 26, 2003 letters from Ferguson to Bradley and Sostek, attached hereto as Exhibit A.

patents. In letters dated December 16 and 30, 2003, Motorola notified STM that its document production was deficient.[8] In the December 30 letter, Motorola requested to meet and confer with STM counsel regarding STM's deficiencies. As part of STM's scheme to delay producing relevant discovery, on January 12, 2004—nearly two-and-a-half months after Motorola served its Preliminary Infringement Contentions—STM for the first time blamed its own discovery deficiencies on Motorola's Preliminary Infringement Contentions.[9]

Despite STM's untimely objections, Motorola's Preliminary Infringement Contentions squarely meet the requirements under Patent Rule 3-1. In those papers, Motorola identifies by product, product family and/or specific description STM products accused of infringing the Vaglica patent. Motorola also identifies by specific description STM products accused of infringing the Tobin patent.

Motorola's detailed identifications more than adequately put STM on notice of which STM products and processes Motorola accuses of infringement. STM's objections to Motorola's preliminary contentions are nothing more than an effort to avoid the discovery required by the Patent Rules and the Federal Rules of Civil Procedure.

## II.   ARGUMENT

### A.   Patent Rule 3-1 Requires Sufficient Specificity To Provide Defendant With Notice Of Infringement.

Because preliminary infringement contentions are required, pursuant to Patent Rule 3-1, to be filed at the very early stages of an action and before discovery is exchanged, they are by their nature, preliminary. They are not final contentions, nor are they expert reports, which are filed only after the close of fact discovery. Patent Rule 3-1 does not require a final identification

---

[8] *See* December 16 and 30, 2003 letters from Ferguson to Bradley and Sostek, attached hereto as Exhibit B.

[9] *See* January 12, 2004 letter from Bradley to Galvan, attached hereto as Exhibit C.

of accused products, nor does it require an explanation of the precise manner of infringement. Rather, the Rule just requires sufficient specificity to put an accused infringer on notice as to its infringement.

The Northern District of California has examined the standard for satisfying its comparable version of Patent Rule 3-1. The court in *Network Caching Tech., LLC v. Novell, Inc.*[10] explained that the Rule does not require "evidence of infringement" and is satisfied by providing defendants sufficient specificity to provide some measure of infringement notice:

> At this juncture, a party may comply with Patent LR 3-1 by setting forth particular theories of infringement with **sufficient specificity to provide defendants' with notice of infringement** beyond that which is provided by the mere language of the patents themselves.[11]

Further, Patent Rule 3-1 does not require that "preliminary infringement theories be incontrovertible or presented in excruciating detail."[12] While the Rule states that the disclosures be as specific as possible, "there is no requirement that [plaintiff] thoroughly present and successfully defend its theories of infringement" in the disclosure.[13]

Notwithstanding the language of Patent Rule 3-1 and the case law interpreting the Northern District version of this rule, STM argues that Motorola's contentions are insufficient because they do not identify by name allegedly infringing processes, or products of processes (*see* STM Br. at 4). However, the language of the Rule expressly requires identification by name

---

[10] *Network Caching Tech. L.L.C. v. Novell, Inc.*, 2003 WL 21699799 (N.D. Cal. March 21, 2003) (emphasis added), attached hereto as Exhibit D. STM cites extensively in its Brief to an earlier opinion in that case, *Network Caching*, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002). STM fails to inform this Court, however, of the subsequent *Network Caching* opinion, cited by Motorola here, which clarifies and explains the court's earlier opinion and exposes STM's arguments as flawed.

[11] *Network Caching*, 2003 WL 21699799, at *4 (N.D. Cal. March 21, 2003).

[12] *Id.* at *5.

[13] *Id.*

and model number only "if known."[14]  The full extent of such information is not known to Motorola, and may only be determined through discovery from STM.

Nor does the Rule require, as STM suggests (*see* STM Br. at 5), that Motorola reverse engineer each accused product.  The very court that STM cites for this proposition expressly rejected it, explaining "whether [plaintiff] conducted 'reverse engineering or its equivalent' is **not** synonymous with whether it has complied with Patent LR 3-1."[15]

As *Network Caching* recognized, the Patent Rules specifically contemplate that discovery is very often necessary to fill in gaps and amend preliminary infringement contentions.  For example, the court explained that an infringement analysis that required information solely in the defendants' possession was "[t]he quintessential case allowing amendment of [preliminary infringement contentions] based on information received in discovery."[16]  Other courts have similarly recognized that discovery is required to determine the full extent of infringement.[17]

Motorola has satisfied Patent Rule 3-1 by notifying STM of the products accused of infringing Vaglica and the products and processes accused of infringing Tobin, and in so doing has put STM on notice of Motorola's infringement accusations.  STM's arguments to the contrary are merely an improper ploy to avoid the very discovery obligations that are required under the Patent Rules and the Federal Rules of Civil Procedure.

---

[14] Patent Rule 3-1(b).

[15] *Network Caching*, 2003 WL 21699799, at *5 (N.D. Cal. March 21, 2003) (emphasis added).  The *Network Caching* court concluded, directly contrary to STM's suggestion (*see* STM Br. at 5), that the plaintiff's preliminary infringement contentions, which were based on marketing and white paper information, and not reverse engineering, satisfied Rule 3-1.  Further, STM's suggestion that Motorola need reverse engineer accused products is neither practical for identifying all infringing products nor required by the Patent Rules.  This Court has recognized that reverse engineering is a "costly and time consuming endeavor."  *See Texas Instruments, Inc. v. Hyundai Electronics Indus.*, 42 F. Supp. 2d 660, 664 (E.D. Tex. 1999).

[16] *Network Caching*, 2002 WL 32126128, at *20 (N.D. Cal. Aug. 13, 2002).

[17] *See, e.g., Chamberlain Group, Inc. v. Interlogix, Inc.*, 2002 WL 265174, at *1-2 (N.D. Ill. Feb. 22, 2002) (ordering defendant to produce technical information relating to products which were not specifically accused of infringement to allow plaintiff to discover full nature of infringement before submitting claim charts), *modified on other grounds*, 2002 WL 467153 (N.D. Ill. Mar. 27, 2002).

**B.    Motorola Has Satisfied Patent Rule 3-1 Regarding The Vaglica Patent.**

Motorola's original contentions satisfy Rule 3-1 with respect to the Vaglica patent by

providing detailed claim chart information comparing accused products to the asserted claims.

Nevertheless, as STM notes in its Brief (*see* STM Br. at 3), Motorola agreed to supplement its

Vaglica preliminary infringement contentions, mooting STM's Motion.[18]

The Vaglica patent is directed to a data processor with development support features.  In

its Preliminary Infringement Contentions, Motorola identified numerous, specific STM products

and product families that incorporate certain processor cores that infringe the Vaglica patent.

Among the products and product families that Motorola identified, for example, were STM

product number STw2400 containing the ARM 7 TDMI core, STM's mobile internet ASSP line

containing the ARM 926EJ-S core, and STM Nomadik open multimedia platform containing the

ARM 9EJ core.

Motorola also provided an exemplary claim chart describing, in element-by-element

detail,[19] how an STM product containing an ARM 7 core infringes the Vaglica patent.[20]

Motorola stated that the analysis for STM products containing an ARM 9 core was similar to that

for the ARM 7 core.  Further, while Motorola could not at that time locate sufficient information

---

[18] Motorola agreed to supplement its Vaglica preliminary infringement contentions, before STM filed its Motion, in an effort to assuage STM's concerns and conserve the parties' and Court's resources.  On February 12, 2004, Motorola provided STM with its supplemental contentions, which consist of 13 claim charts further detailing Motorola's contentions.  Because these charts moot STM's motion, Motorola requested that STM withdraw the motion with respect to the Vaglica patent.  *See* February 12, 2004 letter from Blackman to Bradley and Sostek, attached hereto as Exhibit E.  STM refused, necessitating involvement by the Court.  *See* February 13, 2004 letter from Sostek to Galvan and February 16, 2004 letter from Bradley to Galvan, attached hereto as Exhibit F.

[19] STM's complaints (*See* STM Br. at 6-7) regarding the detail in Motorola's claim chart are unfounded.  Motorola's claim charts contain an element-by-element description of Motorola's infringement theory that is more than sufficient to provide notice of that theory to STM.  Motorola's chart contains as much, and often more, detail than similar STM claim charts.  For example, STM identifies a block diagram that in one block, "upon information and belief," contains <u>every</u> element of Claim 1 of U.S. Patent No. 5,359,244.  *See* Second Supplement to Disclosure of Asserted Claims and Preliminary Infringement Contentions of Plaintiff STMicroelectronics, Inc., Exhibit C, at C-8 attached hereto as Exhibit G.

[20] The ARM microprocessor cores at times are referred to by family, such as the ARM 7 family of microprocessor cores.  ARM also makes ARM 9, 10 and 11 family microprocessor cores.

with which to make similar element-by-element claim charts for STM products containing

ARM 10 and 11 family cores, Motorola identified such products on information and belief

because the publicly available information suggested that the analysis would be similar. As

noted above, STM did not assert that this chart was deficient in any way for over *two months.*

Then, in response to a request made by STM, Motorola provided STM with supplemental

preliminary infringement contentions with additional detailed claim charts covering STM

products incorporating ARM 7, 9, 10 and 11 cores. These contentions, as well as those in

Motorola's original disclosure, specifically identify STM accused products by product name,

product family and/or specific description. Motorola thus has satisfied Patent Rule 3-1 by

putting STM on notice of STM accused products and Motorola's preliminary infringement

analysis concerning the Vaglica patent.

> ### C.   **Motorola Has Also Satisfied Patent Rule 3-1 Regarding The Tobin Patent.**
>
> #### 1.   **Tobin Is A Process Patent For Which Process Flow Information Is Required.**

Tobin is a process patent. It covers a process consisting of certain steps for preparing a

silicon substrate with a high quality surface layer. The patent's steps include heating the

substrate in a "reducing ambient," lowering the temperature of the substrate, and maintaining the

substrate at the lower temperature for a time to allow nucleation of oxygen precipitates in the

bulk of the substrate. Various processing steps and parameters claimed in Tobin, such as heating

profiles and processing ambients, cannot be discerned from reverse engineering or otherwise

from examining a finished, commercial STM product. Rather, a complete infringement analysis

for the Tobin patent requires information regarding the actual process steps used to make the

accused products, referred to in the industry as "process flow" information or "process flows."

Process flows can consist of hundreds of interrelated steps, each carried out under precise

operating conditions (*e.g.*, temperature, time, environment), and describe the conditions under which semiconductor elements, in this case substrates, are processed.

### 2. The Necessary Information For More Detailed Contentions Is In STM's Or Its Vendors' Exclusive Possession Or Control.

The Tobin patent requires silicon substrates (also called wafers) that are heated (annealed) in an ambient containing hydrogen. Motorola purchases hydrogen-annealed wafers from two suppliers. Based on information available to Motorola, Motorola believes that at least these suppliers provide STM with hydrogen-annealed wafers made by a process that practices the Tobin patent.[21] Motorola has put STM on notice regarding these wafers (and products including them), and requires the related detailed process flow information in discovery, as contemplated by the Patent Rules, to establish the full extent of STM's infringement.

The necessary process flow information is not publicly available; to the contrary, it is solely in the possession of STM or its wafer vendors. This is the exact scenario that the *Network Caching* court referred to as "the quintessential case allowing amendment of [preliminary infringement contentions] based on information received in discovery."[22]

STM's claims that it cannot provide discovery concerning the Tobin claims without more information (STM Br. at 8) are flatly false, and constitute another ploy by STM to delay discovery and unduly prejudice Motorola in this action. For example, STM <u>can</u>, but refuses to, identify whether STM hydrogen anneals wafers or purchases hydrogen-annealed wafers from its vendors. STM also can produce process flows in its possession for such wafer processing, and seek any other relevant process flows from its vendors.

---

[21] Motorola has confidential information from its wafer suppliers that indicates that additional wafer suppliers also supply STM with hydrogen-annealed silicon wafers. Motorola has asked these suppliers for permission to produce the confidential information.

[22] *Network Caching*, 2002 WL 32126128, at *20 (N.D. Cal. Aug. 13, 2002).

Motorola's Preliminary Infringement Contentions sufficiently notify STM of the accused Tobin products and processes.  STM must produce relevant information, including process flows, for those products and processes.  Motorola will supplement its preliminary infringement contentions to provide more detail, as the discovery rules contemplate, after obtaining such discovery.

### III.    CONCLUSION

For the reasons stated above, Motorola's Preliminary Infringement Contentions satisfy Patent Rule 3-1.  Accordingly, Motorola respectfully requests that the Court deny STM's motion.

Dated:  February 17, 2004

Respectfully submitted,

Kenneth R. Adamo, Esq.
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan, Esq.
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100

David L. Witcoff, Esq.
dlwitcoff@jonesday.com
JONES DAY
77 West Wacker, Suite 3500
Chicago, Illinois, 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Carl R. Roth, Esq.
cr@rothfirm.com
State Bar No. 17312000
Michael Smith, Esq.
ms@rothfirm.com
State Bar No. 18650410
THE ROTH LAW FIRM
115 N. Wellington, Suite 200
Marshall, Texas 75670
Telephone:  903-935-1665
Facsimile:  903-935-1797

**ATTORNEYS FOR DEFENDANT,
MOTOROLA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2004, a true and correct copy of the

above and foregoing document has been forwarded via Federal Express to the following counsel:

Bruce S. Sostek, Esq.
Attorney-in-Charge
Thompson & Knight L.L.P.
1700 Pacific Ave, Ste. 3300
Dallas, Texas 75201–4693

James Bradley, Esq.
Sidley, Austin, Brown & Wood, LLP
717 North Harwood Street, Suite 3400
Dallas, Texas  75201

_____

# Exhibit "A"

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

(312) 269-4366
kpferguson@jonesday.com

239140
091773-012016

November 26, 2003

VIA FACSIMILE AND MAIL

James P. Bradley, Esq.
Sidley, Austin, Brown & Wood, LLP
717 North Harwood Street, Suite 3400
Dallas, Texas 75201

> Re:    Initial Disclosure
> _STMelectronics, Inc. v. Motorola Inc., Case No. 4:03-CV-276 (Sherman)_

Dear James:

   To assist STMicroelectronics, Inc. ("STM") in complying with its disclosure obligations under the patent rules and the Court's discovery below, listed below are the types of documents that Motorola expects to receive from STM in its disclosures. This list is not a Rule 34 document request and is not exhaustive, and STM should include all documents and things in their initial disclosures as required by the rules. In other words, if STM has documents and things in its possession, custody or control that are relevant to the disputed facts but not specifically identified below, they should be part of STM's disclosures as well.

1. Documents sufficient to identify (including without limitation by model and part number) each semiconductor device made, sold, offered for sale, or imported into the United States, which is packaged by STM, or on STM's behalf, at least in part by means of encapsulating a plurality of package sites and then singulating those sites.

2. Documents sufficient to identify each facility that is producing or has produced any device described in paragraph 1.

3. Documents sufficient to identify each manufacturing line that is producing or has produced any device described in paragraph 1.

4. For each device described in paragraph 1, documents sufficient to identify and describe each packaging process step and the resultant product of each such packaging step, including without limitation documents relating to process flows, process step descriptions, process recipes, specifications, manufacturing and engineering drawings, mold cavity drawings, measurements (_e.g._, surface planarity deviation measurements and specifications) and quality control.

5. Documents sufficient to identify (including without limitation by model and part number) each silicon wafer, substrate, or device containing a silicon wafer or substrate, made,

James P. Bradley, Esq.                                    **JONES DAY**
November 26, 2003
Page 2

      sold, offered for sale or imported into the United States, by STM, or on STM's behalf, in
which the silicon wafer or substrate was prepared by a process including at least two
steps, where one step includes heating the wafer or substrate in a reducing ambient and a
later step includes heating the wafer or substrate at a lower temperature.

6.     Documents sufficient to identify each facility that is producing or has produced any
wafer, substrate or device described in paragraph 5.

7.     Documents sufficient to identify each manufacturing line that is producing or has
produced any wafer, substrate or device described in paragraph 5.

8.     For each wafer, substrate or device identified in paragraph 5, documents sufficient to
identify and describe each process step and the resultant product of each such step,
including without limitation documents relating to process flows, process step
descriptions, process recipes specifications, manufacturing and engineering drawings,
measurements, quality control and materials (including without limitation documents
relating to oxygen content and distribution and the formation of gettering sites).

9.     Documents sufficient to identify (including without limitation by model and part number)
each semiconductor device made, sold, offered for sale, or imported into the United
States, by STM, or on STM's behalf, that contains at least one source region in contact
with a region that makes contact with a substrate or the back side of the device.

10.    Documents sufficient to identify (including without limitation by model and part number)
each semiconductor device made, sold, offered for sale, or imported into the United
States, by STM, or on STM's behalf, that contains at least one LDMOS or LDMOST.

11.    Documents sufficient to identify each facility that is producing or has produced any
device described in paragraphs 9 and/or 10.

12.    Documents sufficient to identify each manufacturing line that is producing or has
produced any device described in paragraphs 9 and/or 10.

13.    For each device described in paragraphs 9 and/or 10, documents sufficient to identify and
describe each manufacturing process step, including without limitation documents
relating to process flows, process step descriptions, process recipes and specifications.

14.    Documents sufficient to fully identify and describe the structure and function of each
device described to in paragraphs 9 and/or 10 including without limitation documents
relating to manufacturing and engineering drawings, specifications, measurements,
quality control and materials.

15.    Documents sufficient to identify (including without limitation by model and part number)
each device, sold, offered for sale, or imported into the United States, by STM, or on
STM's behalf, containing a dataprocessor or integrated circuit that incorporates
development support or debugging features or that contains and ARM processor.

CHI-1391071v1

James P. Bradley, Esq.                                    **JONES DAY**
November 26, 2003
Page 3

16.    Documents sufficient to identify (including without limitation by model and part number) each device, sold, offered for sale, or imported into the United States, by STM, or on STM's behalf, containing a dataprocessor or integrated circuit that supports two or more modes of operation, each mode being associated with a set of instructions.

17.    Documents sufficient to identify each facility that is producing or has produced any device described in paragraphs 15 and/or 16.

18.    Documents sufficient to identify each manufacturing line that is producing or has produced any device described in paragraphs 15 and/or 16.

19.    Documents sufficient to fully identify and describe the structure and function of each device referred to in paragraphs 15 and/or 16 including without limitation documents relating to manufacturing and engineering drawings, technical specifications, data sheets, circuit diagrams, schematics, source code, signal pathways, instruction execution, instruction sets, and user manuals.

20.    All STM data books and data sheets, including without limitation, corrections, amendments and supplements, relating to any device or process described above.

21.    All prior art that STM intends to use in this action.

22.    All materials that mention or discuss the patents-in-suit or their inventors.

23.    Any prosecution history files for the United States Patent Nos. 5,812,789; 5,031,092; 5,359,244 ("STM patents-in-suit"), any and all applications related to the STM patents-in-suit, including any continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counter-part applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in any of the patents-in-suit, or claiming the benefit of the filing date of any application whose benefit is claimed in any of the patents-in-suit, whether or not abandoned and whether or not issued ("Related Applications"), and any or all patents based upon any Related Application, including any patents that may have been opposed, contacted or subjected to any nullity proceedings ("Related Patents").

24.    All documents and things that have been identified by any person or entity as prior art to the STM patents-in-suit , the Related Patents or Related Applications or that have been obtained from prior-art searches for the STM patents-in-suit, Related Patents or Related Applications.

25.    Any documents that set forth STM's position on claim construction of any terms in the STM patents-in-suit and Related Patents, on infringement of the STM patents-in-suit and Related Patents, or on the validity of the STM patents-in-suit and Related Patents, including but not limited to such documents generated for licensing purposes, for litigation or for other enforcement activities.

CHI-1391071v1

James P. Bradley, Esq.                                     **JONES DAY**
November 26, 2003
Page 4

26.  Any documents that set forth any person or entity's position on claim construction of any terms in the STM patents-in-suit and Related Patents, on infringement of the STM patents-in-suit and Related Patents or on the validity of the STM patents-in-suit and Related Patents, including but not limited to such documents generated for licensing purposes, for litigation or for other enforcement activities.

27.  All patent licenses covering semiconductor, data processor and/or integrated circuit processes or devices to which STM is or has been a party, including but not limited to licenses relating to the technologies disclosed in the STM patents-in-suit, United States Patent Nos. 5,155,563; 4,548,654; 5,776,798; and 5,084,814 ("Motorola patents-in-suit", and United States Patent Nos. 5,683,548; 4,446,194; 4,758,945; 4,553,314; 4,592,802; and 4,628,341.

28.  Documents relating to STM's licensing policies, both generally and for the STM patents-in-suit.

29.  Documents relating to customary royalty rates for semiconductor, data processor and/or integrated circuit processes or devices patents.

30.  Documents sufficient to explain STM's sales, accounting, and financial systems, such as accounting and controller procedure manuals.

31.  Documents sufficient to explain STM's cost and overhead allocations for the processes and devices described above.

32.  Documents showing STM's sales, revenue, costs, overhead, and profits related to the processes and devices described above.

33.  Documents showing STM's profits and losses for each group or division or accounting units that report revenues and costs associated with each accused STM product.

34.  Documents showing STM's market studies, reports, business plans marketing plans related to any actual or potential market for each accused STM product.

35.  Documents relating to indemnity and insuring agreements under which any party besides STM may be liable to satisfy part or all of a judgement entered in this action or to reimburse for payment made to satisfy the judgement.

36.  Documents relating to STM's allegations that STM does not infringe the Motorola patents-in-suit.

37.  Documents relating to STM's allegations that the Motorola patents-in-suit are invalid.

38.  Documents relating to STM's allegations that the Motorola patents-in-suit are unenforceable.

NOV 26 2003  3:17 PM FR    .ES DAY CHICAGO12 782 8585 TO  .2149695100    P.06/11

James P. Bradley, Esq.                                    **JONES DAY**
November 26, 2003
Page 5

39.  Documents relating to STM's allegations that Motorola's claims are barred by laches
     and/or equitable estoppel.

40.  Documents relating to STM's allegations that Motorola's claims are barred by license
     and/or joint development agreement, including but not limited to a copy of the Crolles2
     Advanced Technology and 300mm Pilot Cooperation Agreement.

41.  Documents relating to STM's allegations that Motorola's claims are barred by immunity.

42.  Documents relating to STM's allegations that Motorola's claims are barred by contract.

43.  Documents or other evidentiary materials upon which any computation of damages is
     based.

     Please call me if you have any questions.

                                    Very truly yours,

                                    Kevin P. Ferguson


cc:   Bruce S. Sostek, Esq.
      Hilda C. Galvan, Esq.

CHI-1391071v1

# JONES DAY

77 WEST WACKER · CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 · FACSIMILE: 312-782-8585

(312) 269-4366
kpferguson@jonesday.com

239140
091773-012016

November 26, 2003

### VIA FACSIMILE AND MAIL

Bruce S. Sostek, Esq.
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201-4693

     Re:   Initial Disclosure
          *STMelectronics, Inc. v. Motorola Inc., Case No. 4:03-CV-276 (Sherman)*

Dear Bruce:

     To assist STMicroelectronics, Inc. ("STM") in complying with its disclosure obligations under the patent rules and the Court's discovery below, listed below are the types of documents that Motorola expects to receive from STM in its disclosures. This list is not a Rule 34 document request and is not exhaustive, and STM should include all documents and things in their initial disclosures as required by the rules. In other words, if STM has documents and things in its possession, custody or control that are relevant to the disputed facts but not specifically identified below, they should be part of STM's disclosures as well.

1.   Documents sufficient to identify (including without limitation by model and part number) each semiconductor device made, sold, offered for sale, or imported into the United States, which is packaged by STM, or on STM's behalf, at least in part by means of encapsulating a plurality of package sites and then singulating those sites.

2.   Documents sufficient to identify each facility that is producing or has produced any device described in paragraph 1.

3.   Documents sufficient to identify each manufacturing line that is producing or has produced any device described in paragraph 1.

4.   For each device described in paragraph 1, documents sufficient to identify and describe each packaging process step and the resultant product of each such packaging step, including without limitation documents relating to process flows, process step descriptions, process recipes, specifications, manufacturing and engineering drawings, mold cavity drawings, measurements (*e.g.*, surface planarity deviation measurements and specifications) and quality control.

5.   Documents sufficient to identify (including without limitation by model and part number) each silicon wafer, substrate, or device containing a silicon wafer or substrate, made,

Bruce S. Sostek, Esq.                                      **JONES DAY**
November 26, 2003
Page 2

  sold, offered for sale or imported into the United States, by STM, or on STM's behalf, in
  which the silicon wafer or substrate was prepared by a process including at least two
  steps, where one step includes heating the wafer or substrate in a reducing ambient and a
  later step includes heating the wafer or substrate at a lower temperature.

6.  Documents sufficient to identify each facility that is producing or has produced any
  wafer, substrate or device described in paragraph 5.

7.  Documents sufficient to identify each manufacturing line that is producing or has
  produced any wafer, substrate or device described in paragraph 5.

8.  For each wafer, substrate or device identified in paragraph 5, documents sufficient to
  identify and describe each process step and the resultant product of each such step,
  including without limitation documents relating to process flows, process step
  descriptions, process recipes specifications, manufacturing and engineering drawings,
  measurements, quality control and materials (including without limitation documents
  relating to oxygen content and distribution and the formation of gettering sites).

9.  Documents sufficient to identify (including without limitation by model and part number)
  each semiconductor device made, sold, offered for sale, or imported into the United
  States, by STM, or on STM's behalf, that contains at least one source region in contact
  with a region that makes contact with a substrate or the back side of the device.

10.  Documents sufficient to identify (including without limitation by model and part number)
  each semiconductor device made, sold, offered for sale, or imported into the United
  States, by STM, or on STM's behalf, that contains at least one LDMOS or LDMOST.

11.  Documents sufficient to identify each facility that is producing or has produced any
  device described in paragraphs 9 and/or 10.

12.  Documents sufficient to identify each manufacturing line that is producing or has
  produced any device described in paragraphs 9 and/or 10.

13.  For each device described in paragraphs 9 and/or 10, documents sufficient to identify and
  describe each manufacturing process step, including without limitation documents
  relating to process flows, process step descriptions, process recipes and specifications.

14.  Documents sufficient to fully identify and describe the structure and function of each
  device described to in paragraphs 9 and/or 10 including without limitation documents
  relating to manufacturing and engineering drawings, specifications, measurements,
  quality control and materials.

15.  Documents sufficient to identify (including without limitation by model and part number)
  each device, sold, offered for sale, or imported into the United States, by STM, or on
  STM's behalf, containing a dataprocessor or integrated circuit that incorporates
  development support or debugging features or that contains and ARM processor.

Bruce S. Sostek, Esq.                                          **JONES DAY**
November 26, 2003
Page 3

16.   Documents sufficient to identify (including without limitation by model and part number)
      each device, sold, offered for sale, or imported into the United States, by STM, or on
      STM's behalf, containing a dataprocessor or integrated circuit that supports two or more
      modes of operation, each mode being associated with a set of instructions.

17.   Documents sufficient to identify each facility that is producing or has produced any
      device described in paragraphs 15 and/or 16.

18.   Documents sufficient to identify each manufacturing line that is producing or has
      produced any device described in paragraphs 15 and/or 16.

19.   Documents sufficient to fully identify and describe the structure and function of each
      device referred to in paragraphs 15 and/or 16 including without limitation documents
      relating to manufacturing and engineering drawings, technical specifications, data sheets,
      circuit diagrams, schematics, source code, signal pathways, instruction execution,
      instruction sets, and user manuals.

20.   All STM data books and data sheets, including without limitation, corrections,
      amendments and supplements, relating to any device or process described above.

21.   All prior art that STM intends to use in this action.

22.   All materials that mention or discuss the patents-in-suit or their inventors.

23.   Any prosecution history files for the United States Patent Nos. 5,812,789; 5,031,092;
      5,359,244 ("STM patents-in-suit"), any and all applications related to the STM patents-
      in-suit, including any continuations, continuations-in-part, divisions, interferences,
      reexaminations, reissues, parents, foreign counter-part applications, and any other
      applications disclosing, describing or claiming any invention disclosed, described or
      claimed in any of the patents-in-suit, or claiming the benefit of the filing date of any
      application whose benefit is claimed in any of the patents-in-suit, whether or not
      abandoned and whether or not issued ("Related Applications"), and any or all patents
      based upon any Related Application, including any patents that may have been opposed,
      contacted or subjected to any nullity proceedings ("Related Patents").

24.   All documents and things that have been identified by any person or entity as prior art to
      the STM patents-in-suit , the Related Patents or Related Applications or that have been
      obtained from prior-art searches for the STM patents-in-suit, Related Patents or Related
      Applications.

25.   Any documents that set forth STM's position on claim construction of any terms in the
      STM patents-in-suit and Related Patents, on infringement of the STM patents-in-suit and
      Related Patents, or on the validity of the STM patents-in-suit and Related Patents,
      including but not limited to such documents generated for licensing purposes, for
      litigation or for other enforcement activities.

Bruce S. Sostek, Esq.                                    **JONES DAY**
November 26, 2003
Page 4

26.   Any documents that set forth any person or entity's position on claim construction of any
      terms in the STM patents-in-suit and Related Patents, on infringement of the STM
      patents-in-suit and Related Patents or on the validity of the STM patents-in-suit and
      Related Patents, including but not limited to such documents generated for licensing
      purposes, for litigation or for other enforcement activities.

27.   All patent licenses covering semiconductor, data processor and/or integrated circuit
      processes or devices to which STM is or has been a party, including but not limited to
      licenses relating to the technologies disclosed in the STM patents-in-suit, United States
      Patent Nos. 5,155,563; 4,548,654; 5,776,798; and 5,084,814 ("Motorola patents-in-suit",
      and United States Patent Nos. 5,683,548; 4,446,194; 4,758,945; 4,553,314; 4,592,802;
      and 4,628,341.

28.   Documents relating to STM's licensing policies, both generally and for the STM patents-
      in-suit.

29.   Documents relating to customary royalty rates for semiconductor, data processor and/or
      integrated circuit processes or devices patents.

30.   Documents sufficient to explain STM's sales, accounting, and financial systems, such as
      accounting and controller procedure manuals.

31.   Documents sufficient to explain STM's cost and overhead allocations for the processes
      and devices described above.

32.   Documents showing STM's sales, revenue, costs, overhead, and profits related to the
      processes and devices described above.

33.   Documents showing STM's profits and losses for each group or division or accounting
      units that report revenues and costs associated with each accused STM product.

34.   Documents showing STM's market studies, reports, business plans marketing plans
      related to any actual or potential market for each accused STM product.

35.   Documents relating to indemnity and insuring agreements under which any party besides
      STM may be liable to satisfy part or all of a judgement entered in this action or to
      reimburse for payment made to satisfy the judgement.

36.   Documents relating to STM's allegations that STM does not infringe the Motorola
      patents-in-suit.

37.   Documents relating to STM's allegations that the Motorola patents-in-suit are invalid.

38.   Documents relating to STM's allegations that the Motorola patents-in-suit are
      unenforceable.

CHI-1383441v4

Bruce S. Sostek, Esq.                                    **JONES DAY**
November 26, 2003
Page 5

39.   Documents relating to STM's allegations that Motorola's claims are barred by laches
      and/or equitable estoppel.

40.   Documents relating to STM's allegations that Motorola's claims are barred by license
      and/or joint development agreement, including but not limited to a copy of the Crolles2
      Advanced Technology and 300mm Pilot Cooperation Agreement.

41.   Documents relating to STM's allegations that Motorola's claims are barred by immunity.

42.   Documents relating to STM's allegations that Motorola's claims are barred by contract.

43.   Documents or other evidentiary materials upon which any computation of damages is
      based.

      Please call me if you have any questions.

                                    Very truly yours,

                                    Kevin P. Ferguson


cc:   James P. Bradley, Esq.
      Hilda C. Galvan, Esq.


CHI-1383441v4

Exhibit "B"

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

(312) 269-4366
kpferguson@jonesday.com

239140
091773-012017                December 16, 2003

VIA FACSIMILE AND U.S. MAIL

Bruce S. Sostek, Esq.
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201-4693
(214) 880-3252

James P. Bradley, Esq.
Sidley, Austin, Brown & Wood, LLP
717 North Harwood Street, Suite 3400
Dallas, Texas 75201
(214) 981-3400

        Re:    *STMicroelectronics v. Motorola Inc., Case No. 4:03-cv-276 (Sherman)*

Dear Bruce and Jim:

        Upon reviewing STM's initial document productions, we note that STM has not met its
initial disclosure obligations under local and federal rules. STM has failed to produce several
categories of documents identified in my November 26, 2003 letter concerning STM's initial
disclosure obligations ("Initial Disclosure Letter") as well as documents related to STM products
accused of infringement in Motorola's Preliminary Infringement Contentions.

        STM has not produced relevant documents regarding products accused of infringing U.S.
Patent 5,084,814 to Vaglica. While STM produced ARM documents describing, in part, the
operation of the ARM core, STM has wholly failed to produce STM documents relating to
products accused by Motorola. For example, STM has not produced documents sufficient to
identify STM products containing a dataprocessor or integrated circuit that, incorporates
development support or debugging features, contains an ARM core and/or supports two modes
or operations. (*See* Initial Disclosure Letter, ¶¶ 15-16). Nor has STM produced documents
sufficient to identify the facilities or manufacturing lines in which such products are produced
(*see id.* at ¶¶ 17-18), or the structure of such products (*see id.* at ¶ 19). In fact, apart from ARM
documentation, it appears that STM has not produced any documents regarding such STM
products. Please supplement STM's document production to address these deficiencies.

CHI-1394541v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MUMBAI • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

December 16, 2003
Page 2

Further, STM has not produced any documents relating to products accused of infringing U.S. Patent No. 4,548,654 to Tobin. STM has not produced any documentation relating to products prepared by a two-step heating process in which a wafer or substrate is heated in a reducing ambient. (*See* Initial Disclosure Letter, ¶¶ 5-8). Please supplement STM's document production to correct these deficiencies.

We are in the process of reviewing the produced documents relating to STM products accused of infringing the Quan and Davies patents. Initially, while it appears that STM has produced documents identifying some stand-alone LDMOS products, STM has not produced documents related to integrated devices that incorporate LDMOS technology, such as STM's BCD6 and RF-BCD product lines. Please supplement STM's production to include responsive documents regarding all STM products that incorporate LDMOS technology.

Additionally, while the CD labeled "STNMS CD5; STNMS 011919 - STNMS 015486; 12/10/2003" contains documents relating to STM products utilizing BGA packaging technology, the files corresponding to documents STNMS 14456 - 15486 cannot be opened. Please produce these documents in an accessible form.

The above constitutes examples of deficiencies that we have identified upon initial review of STM's production. We are continuing to review STM's production and will notify you if there are any additional deficiencies. As you know, the Court has set an aggressive discovery schedule in this case and STM's failure to meet its discovery obligations prejudices Motorola. Accordingly, please supplement STM's document production as outlined above and, more generally, to produce all relevant documents pursuant to STM's disclosure obligations by no later than December 23, 2003.

Very truly yours,

Kevin P. Ferguson

cc:     Hilda C. Galvan

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

(312) 269-4366
kpferguson@jonesday.com

239140
091773-012017                    December 30, 2003

VIA FACSIMILE AND U.S. MAIL

Bruce S. Sostek, Esq.
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201-4693
(214) 880-3252

James P. Bradley, Esq.
Sidley, Austin, Brown & Wood, LLP
717 North Harwood Street, Suite 3400
Dallas, Texas 75201
(214) 981-3400

    Re:   *STMicroelectronics v. Motorola Inc., Case No. 4:03-cv-276 (Sherman)*

Dear Bruce and Jim:

    Upon reviewing STM's additional document productions, we note that STM has still not
met its initial disclosure obligations under local and federal rules.  STM has failed to produce
several categories of documents identified in my letter of November 26, 2003 concerning STM's
initial disclosure obligations, as well as my letter of December 16, 2003 specifying several
outstanding deficiencies in STM's document production.

    Additionally, STM's document production appears to also be deficient with respect to the
categories of documents identified in ¶¶ 23, 24, 25, and 26 of my letter of November 26, 2003.
For example, Motorola has not yet received:  (1) the full file histories of the STM, Inc. patents-
in-suit and related applications (including the file history of U.S. Patent No. 4,967,326),
including all documents prepared by or on behalf of the inventors relating in any manner to the
STM, Inc. patents-in-suit, the subject matter disclosed in the STM, Inc. patents-in-suit, and the
assignment of rights to any such subject matter; (2) documents that have been identified by any
person or entity as prior art to the STM, Inc. patents-in-suit; and (3) all documents that set forth
or relate to STM's position or any other person or entity's position on claim construction of any
terms in the STM, Inc. patents-in-suit and related patents or on the validity of the STM, Inc.
patents-in-suit and related patents, including but not limited to such documents generated for
licensing purposes, for litigation (including relevant disclosures, pleadings and depositions from
STM, Inc.'s present case against Broadcom), or for other enforcement activities.  Much of this

CHI-1396099v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MUMBAI • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

December 30, 2003
Page 2

information is relevant to the Court's claim construction and the parties are required to identify such documents for claim construction purposes by January 12. As such, these documents should be produced immediately and should be addressed during the meet and confer.

Despite our request that STM promptly comply with their discovery obligations, this has not occurred. While we understand that the holidays, as well as Mr. Bradley's honeymoon, have had played some role in the delay, STM's discovery deficiencies must be addressed promptly. Let me know your availability on January 5 or the morning of January 6 for a meet and confer on the deficiencies noted in this letter and my letter of December 16, 2003.

Very truly yours,

Kevin P. Ferguson

cc:    Hilda C. Galvan

Exhibit "C"

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | 717 NORTH HARWOOD | LOS ANGELES |
| BRUSSELS | SUITE 3400 | NEW YORK |
| CHICAGO | DALLAS, TEXAS 75201 | SAN FRANCISCO |
| | TELEPHONE 214 981 3300 | |
| DALLAS | FACSIMILE 214 981 3400 | SHANGHAI |
| GENEVA | www.sidley.com | SINGAPORE |
| HONG KONG | FOUNDED 1866 | TOKYO |
| LONDON | | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(214) 981-3306

WRITER'S E-MAIL ADDRESS
jbradley@sidley.com

January 12, 2004

Hilda Galvan, Esq.                                    **VIA FACSIMILE**
JONES DAY
2727 N. Harwood
Dallas, Texas 75201

> Re: *STMicroelectronics, Inc. v. Motorola, Inc. v. STMicroelectronics N.V.*
> *and STMicroelectronics, Inc.* Civil Action No. 4:03–CV-276 (Sherman)

Dear Hilda:

Motorola's Disclosure of Asserted Claims and Preliminary Infringements Contentions fails to comply with the disclosures required by Local Rule P.R. 3-1(a)-(d) and (f) for the reasons noted below. In view of the accelerated schedule for this matter, we ask that Motorola promptly amend or supplement its preliminary infringement contentions. If Motorola declines to do so, please advise us of that fact now so we can, if necessary, bring this deficiency to the Court's attention.

Local Rule P.R. 3.1(a)-(c) requires Motorola to identify each claim that is allegedly infringed by each opposing party. However, Motorola's preliminary infringement contentions do not attempt to identify STNV products or processes, rather Motorola ignores the rules and lists products it attributes to both defendants.

Motorola also fails to comply with Local Rule P.R. 3-1(d), which requires Motorola to state whether each element of "each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Motorola's assertion that both defendants infringe "the asserted claims literally and/or by the Doctrine of Equivalents" is meaningless and does not provide the necessary details of a patentee's infringement contentions called for by this rule. Motorola must now identify in its preliminary infringement contentions whether the alleged infringement is literal or under the doctrine of its equivalents, and Motorola must do this for "each element of each asserted claim." (emphasis added) Further, Motorola must apply this rule with respect to the Accused Instrumentality for each defendant.

SIDLEY AUSTIN BROWN & WOOD LLP IS A DELAWARE LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

SIDLEY AUSTIN BROWN & WOOD LLP                          DALLAS

Hilda Galvan, Esq.
January 12, 2004
Page 2

        In addition to the above, Motorola fails to comply with Local P.R. 3-1 in its other
assertions involving the '814 patent. Motorola's footnote reference in its infringement claim
chart that the analysis of the ARM 9 Family is "similar" does not comply with the rule. Further,
Motorola's statement that upon "information and belief" the analysis for products containing the
ARM 10 and 11 Family is similar to the ARM 7 is insufficient information, and it does not bring
the ARM 9, ARM 10 and ARM 11 Family cases into issue in this case.

        In addition to the above, Motorola's contentions are also deficient in failing to
follow Local Rule P.R. 3-1 with respect to the '694 patent. Motorola's allegations that
"Processes used by or for STM" is vague and insufficient. P.R. 3-1(b) requires that each accused
process "must be identified by name, if known, or by product, device or apparatus, which, when
used allegedly results in the practice of the claimed method or process." Motorola does not
identify by name any process allegedly used by a third party supplying wafers to STNV.
Motorola's claim charts also fail to identify any process of STNV by name or any product
allegedly made by STNV allegedly using any claimed process.

        In view of the tight schedule which we are all working under, we will call you
later today or tomorrow to discuss whether Motorola will agree to immediately provide its
preliminary infringement contentions and comply with the Patent Rules. We look forward to
receiving your cooperation in this matter.

                                        Very truly yours,

                                        James P. Bradley

JPB/bls

cc:     Mike Jones, Esq. (via facsimile)
        Bruce S. Sostek, Esq. (via facsimile)
        Jane P. Brandt, Esq. (via facsimile)
        Kevin P. Ferguson, Esq. (via facsimile)

# Exhibit "E"

# JONES DAY

77 WEST WACKER

CHICAGO, ILLINOIS 60601-1692

TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

(312) 269-4369
msblackman@jonesday.com

627128
091773-012017

February 12, 2004

VIA FACSIMILE
CONFIRMATION VIA U.S. MAIL

Bruce S. Sostek, Esq.
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201-4693
(214) 880-3252

James P. Bradley, Esq.
Sidley, Austin, Brown & Wood, LLP
717 North Harwood Street, Suite 3400
Dallas, Texas 75201
(214) 981-3400

Re:     *STMicroelectronics v. Motorola Inc., Case No. 4:03-cv-276 (Sherman)*

Dear Bruce and Jim:

In response to your requests, and as we told you we would do before you filed STM's *Motion To Enforce Motorola Inc.'s Compliance With Patent Rule 3-1* (*see, e.g.*, January 28, 2004 letter of Hilda Galvan to James Bradley), we are enclosing supplemental preliminary infringement charts with respect to the Vaglica patent for STM products that incorporate ARM7 TDMI, ARM9 TDMI, ARM926EJ-S, ARM1026EJ-S or ARM1136JF-S cores. In view of these supplemental charts, STM's *Motion To Enforce* is moot with respect to Vaglica. Please confirm by Friday, February 13 that you will withdraw STM's Motion as it pertains to Vaglica, so that we may so advise the Court in our responsive brief.

We have recently discovered additional product numbers for STM products that we believe infringe Motorola's Davies patent: LET9002, LET9006, LET21004, LET21008, LET20030, LET20030S, LET21030, LET2130S, LET9045, LET9045S, LET9060, LET9060S, LET19060C, LET20030C, LET21030C, LET8180, LET9045C, LET9045D, LET9060C, LET9060P, LET9085, and LET9130. We are not clear as to whether these are different products than those previously identified in Motorola's Preliminary Infringement Contentions, or whether they are merely different designations for products already disclosed. Please advise whether these are newly-identified products, so that we can timely supplement our Preliminary Infringement Contentions.

CHI-1403554v1

ATLANTA • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK
MILAN • MUMBAI* • MUNICH • NEW DELHI* • NEW YORK • PARIS • PITTSBURGH • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON
*ASSOCIATE FIRM

JONES DAY

February 12, 2004
Page 2

In addition, based on our continuing investigation and analysis, we have identified additional STM products that we believe infringe the Vaglica and Quan patents. Consistent with the position taken by both parties that additional products, but not additional claims, may be added, we intend to seek leave to supplement our contentions, as STM itself has done. Please let us know whether STMicroelectronics, Inc. and STMicroelectronics NV will consent to, or not oppose, Motorola's Motion for Leave to Supplement its Preliminary Infringement Contentions pertaining to the enclosed Vaglica charts and the additional products that Motorola believes infringe the Vaglica, Quan and, if necessary, Davies patents.

We look forward to your response by February 13.

Very truly yours,

Marc S. Blackman

Enclosures

cc:     David L. Witcoff
        Hilda C. Galvan

CHI-1403554v1

Exhibit "F"

# THOMPSON & KNIGHT LLP

ATTORNEYS AND COUNSELORS

1700 PACIFIC AVENUE • SUITE 3300
DALLAS, TEXAS 75201-4693
(214) 969-1700
FAX (214) 969-1751
www.tklaw.com

Direct Dial: 214-969-1237
E-Mail: bruce.sostek@tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON

ALGIERS
MONTERREY
PARIS
RIO DE JANEIRO

February 13, 2004

**VIA FACSIMILE**
Hilda C. Galvan, Esq.
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515

> Re: *STMicroelectronics, Inc. v. Motorola, Inc.*
> Civil Action No.: 4:03-CV-276

Dear Hilda:

Last evening I received a letter from Marc Blackman with what purports to be supplemental preliminary infringement contentions with respect to the Vaglica patent. It is suggested that in view of the attachment, the ST NV and ST INC Motion to Enforce Motorola Inc.'s Compliance with Patent Rule 3-1 "is moot with respect to Vaglica." Review of the attachment reveals that it suffers from many of the same deficiencies as Motorola's prior infringement contentions. It does not identify specifically by name the allegedly infringing products. Nor does it show how each of the elements of Motorola's claims compare to specific ST products. Because this "supplementation" does not cure the deficiencies pointed out in the motion to enforce compliance with patent rule 3-1, ST INC does not believe that this enclosure has mooted the issue raised in the pending motion. It, therefore, respectfully declines to withdraw the motion.

Motorola also contends that based on its continuing investigation and analysis, additional ST products believed to infringe the Vaglica and Quan patents have been identified. With regard to the Vaglica patent, I do not understand why these products were not identified in the attached supplementation, as this is exactly what we have sought with regard to that patent: separately for each asserted claim, each ST product being accused and a chart identifying specifically where each element of each asserted claim is found within the accused product. This is precisely what ST INC supplied to Motorola with each of its infringement contentions. Motorola's refusal to comply with patent rule 3-1 continues to be a significant problem.

As a general proposition, we do not disagree that both ST INC and Motorola should be allowed to add additional products to their infringement contentions where products were specifically identified and charted in the first instance, provided that each such additional product is individually charted in full compliance with patent rule 3-1. Unless and until this is done, ST INC has and will continue to object to Motorola's deficient infringement contentions.

Hilda C. Galvan, Esq.
February 13, 2003
Page 2


Although ST INC does not contest Motorola's (or ST INC's) ability to identify additional products, ST INC would continue to oppose any attempt by Motorola to identify allegedly infringing products for the first time during this supplementation process. Motorola clearly had an initial good faith obligation to identify what it believed to be infringing ST products before it filed suit on these patents on September 11, 2002.

On a related note, for supplemental identifications to be made in a timely manner, I would suggest that we agree that all such supplementations be identified and charted no less than 30 days before the conclusion of fact discovery, or May 21, 2004.

Sincerely,

Bruce S. Sostek

BSS:psd

cc:     James P. Bradley, Esq.
        Mike Jones, Esq.
        Clyde Siebman, Esq.

071472.000002.1702983.1

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | 717 NORTH HARWOOD | LOS ANGELES |
| BRUSSELS | SUITE 3400 | NEW YORK |
| CHICAGO | DALLAS, TEXAS 75201 | SAN FRANCISCO |
| | TELEPHONE 214 981 3300 | |
| DALLAS | FACSIMILE 214 981 3400 | SHANGHAI |
| GENEVA | www.sidley.com | SINGAPORE |
| HONG KONG | FOUNDED 1866 | TOKYO |
| LONDON | | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(214) 981-3306

WRITER'S E-MAIL ADDRESS
jbradley@sidley.com

February 16, 2004

Hilda Galvan, Esq.
JONES DAY
2727 N. Harwood
Dallas, Texas 75201

**VIA FACSIMILE:  (214) 969-5100**

Re:  *STMicroelectronics, Inc. v. Motorola, Inc. v. STMicroelectronics N.V.*
*and STMicroelectronics, Inc.* Civil Action No. 4:03-CV-276 (Sherman)

Dear Hilda:

We are responding to Mark Blackman's letter of February 12, 2004, with what he claimed to be supplemental preliminary infringement charts for the Vaglica patent.

As STMicroelectronics, Inc. stated to you in its letter dated February 13, 2004, Motorola's new infringement charts do not cure the deficiencies noted in our motion to require Motorola to comply with Patent Rule 3-1. None of the infringement charts show how any element of a Motorola patent claim applies to a specific product of STMicroelectronics N.V. Because the purported "supplementation" does not cure the deficiencies motion, ST NV does not believe it has mooted any issue raised in the pending motion.

While Mr. Blackman states that Motorola has identified additional products that you believe to infringe the Vaglica and Quan patents, these products are not identified in the attached supplementation. Accordingly, we request that you promptly provide us with the supplementation setting forth Motorola's new infringement contentions for each accused product along with a chart identifying where each element of each asserted claim is found within the products that you contend you have recently identified.

We agree with the proposal set forth by Mr. Sostek regarding supplemental identifications of infringing products.

Very truly yours,

James P. Bradley

SIDLEY AUSTIN BROWN & WOOD LLP IS A DELAWARE LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

SIDLEY AUSTIN BROWN & WOOD LLP                          DALLAS

Hilda Galvan, Esq.
February 16, 2004
Page 2


JPB/bls

cc:     Bruce S. Sostek, Esq. (via facsimile)
        Clyde M. Siebman, Esq. (via facsimile)
        Mark Blackman, Esq. (via facsimile)

Exhibit "G"

# EXHIBIT C

## DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS OF PLAINTIFF STMICROELECTRONICS, INC. FOR U.S. PATENT NO. 5,359,244

ST INC makes the following infringement contentions with respect to U.S. Patent No. 5,359,244 (the "'244 patent"):

**3–1(a) Each claim of each patent in suit that is allegedly infringed by each opposing party:**

ST INC asserts that Motorola infringes at least Claims 1, 13, 14 and 15.

**3–1(b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process:**

ST INC asserts that Claim 1 is infringed by the products identified below:

| Motorola Products that Infringe Claim 1 |
| --- |
| MC33253 |
| MC33883 |
| MC33982 & MC33984 |

ST INC asserts that Claim 13 is infringed by the products identified below:

| Motorola Products that Infringe Claim 13 |
| --- |
| MC33253 |
| MC33982 & MC33984 |

ST INC asserts that Claim 14 is infringed by the products identified below:

| Motorola Products that Infringe Claim 14 |
| --- |
| MC33253 |
| MC33883 |
| MC33982 & MC33984 |

ST INC asserts that Claim 15 is infringed by the products identified below:

| Motorola Products that Infringe Claim 15 |
| --- |
| MC33253 |
| MC33883 |
| MC33982 & MC33984 |

3–1(c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function:

The chart for each identified product is included at the identified Exhibit:

| Infringing Motorola Product | Exhibit No. |
| --- | --- |
| MC33253 | C–1 |
| MC33883 | C–2 |
| MC33982 & MC33984 | C–3 |

3–1(d) Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality:

Presently, ST INC believes that each element of each asserted claim is literally found in the accused products as described in the accompanying exhibits, but ST INC reserves the right to assert infringement under the doctrine of equivalents after further investigation and/or construction of claim terms by the Court.

3–1(e) For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled:

The '244 patent claims a priority date of July 31, 1992.

3–1(f) If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim:

Presently, ST INC is not relying on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention.

EXHIBIT C–1

| Claim 1 of U.S. Patent No. 5,359,244 | |
|---|---|
| Claim Language | Description of where each claim element is found in Motorola's MC33253 |
| A circuit for driving a MOS power transistor, comprising: | Motorola's data sheet, designated "order number: MC33253/D" (herein the "Data Sheet") describes that the MC33253 is a "pre-driver." It drives a MOS power transistor. |
| a first gate drive circuit for charge pumping a node connected to a gate of the MOS power transistor to a gate supervoltage higher than a positive supply voltage by at least an amount equal to a threshold voltage of the MOS power transistor, wherein the first gate drive circuit utilizes a first charge current to charge the MOS power transistor gate to the gate supervoltage at a first rate; | The Data Sheet includes a Figure 1 showing the "Principal Building Blocks" of the MC33253. Figure 1 contains a block labeled "Charge Pump" that is connected to the gate of the MOS power transistor through a block labeled "Output." Within these blocks is a circuit that generates a first current of up to 1A at the output designated GATE_HS. |
| a second gate drive circuit for charge pumping the node connected to the gate of the MOS power transistor to maintain the voltage on such node at the gate supervoltage, wherein the second gate drive circuit utilizes a second charge current, less than the first charge current, to charge the MOS power transistor gate to the gate supervoltage at a second rate which is slower than the first rate; and | The Data Sheet includes a Figure 1 showing the "Principal Building Blocks" of the MC33253. Figure 1 contains a block labeled "Charge Pump" that is connected to the gate of the MOS power transistor through a block labeled "Output." Upon information and belief, within these blocks is a circuit that generates a second current of up to 100mA at the output designated GATE_HS. |
| a control circuit, wherein the control circuit enables the first and second gate drive circuits when the MOS power transistor is initially turned on, and thereafter disables the first gate drive circuit after a selected period of time. | The Data Sheet includes a Figure 1 showing the "Principal Building Blocks" of the MC33253. Figure 1 contains a block labeled "Logic" connected through other blocks to the output block. Upon information and belief, within these blocks is a control circuit. |

| Claim 13 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33253 |
| --- | --- |
| The circuit of claim 1, | See description above for claim 1. |
| further comprising means for connecting the gate of the MOS power transistor to ground, wherein the MOS power transistor can be turned off when desired. | The Data Sheet includes a Figure 8 that shows a transistor T2 that acts as a switch to complete a low resistance path to ground to turn off the gate of the MOS power transistor when desired. |

| Claim 14 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33253 |
| --- | --- |
| A method for driving a MOS power transistor, comprising the steps of: | As described above in connection with claim 1, the MC33253 drives a MOS power transistor. When the device operates, it performs a method for driving a MOS power transistor. |
| when the MOS power transistor is turned on, charging a node connected to a gate thereof to a gate supervoltage higher than a positive supply voltage by at least an amount equal to a threshold voltage of the MOS power transistor, utilizing a first charge current to charge the node at a first rate; and | The Data Sheet includes a section called "Driver Characteristics." That section indicates that the MC33253 generates a first current of up to 1A to charge the gate node. |
| after a predetermined time period, maintaining the voltage on the node at the gate supervoltage utilizing a second charge current, less than the first charge current, to charge the MOS power transistor gate to the gate supervoltage at a at a second rate, wherein said second rate is slower than said first rate. | The Data Sheet includes a section called "Driver Characteristics." That section indicates that the MC33253 generates a second current of up to 100mA to charge the gate node after a predetermined period of time. |

| Claim 15 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33253 |
| --- | --- |
| The method of claim 14, wherein said step of charging the node connected to the gate thereof at the first rate comprises charging the node using a first and a second gate drive circuit. | As described above in connection with claim 1, the MC33253 includes a first and second gate drive circuits. |

EXHIBIT C–2

| Claim 1 of U.S. Patent No. 5,359,244 | |
| --- | --- |
| Claim Language | Description of where each claim element is found in Motorola's MC33883 |
| A circuit for driving a MOS power transistor, comprising: | Motorola literature found at http://e-www.motorola.com/files/analog/rich_media/webcast_slides/RMWCS_ANALOG_POWERICS.pdf indicates that the MC33883 is a "pre-driver." It drives a MOS power transistor. |
| a first gate drive circuit for charge pumping a node connected to a gate of the MOS power transistor to a gate supervoltage higher than a positive supply voltage by at least an amount equal to a threshold voltage of the MOS power transistor, wherein the first gate drive circuit utilizes a first charge current to charge the MOS power transistor gate to the gate supervoltage at a first rate; | Motorola data sheet, designated "Order Number: MC33883/D" (herein the "Data Sheet"), includes a Figure 1 showing the "Principal Building Blocks" of the MC33883. Figure 1 contains a block labeled "Charge Pump" that is connected to the gate of the MOS power transistor through a block labeled "Output." Within these blocks is a circuit that generates a first current of up to 1A at the output designated GATE_HS. |
| a second gate drive circuit for charge pumping the node connected to the gate of the MOS power transistor to maintain the voltage on such node at the gate supervoltage, wherein the second gate drive circuit utilizes a second charge current, less than the first charge current, to charge the MOS power transistor gate to the gate supervoltage at a second rate which is slower than the first rate; and | The Data Sheet includes a Figure 1 showing the "Principal Building Blocks" of the MC33883. Figure 1 contains a block labeled "Charge Pump" that is connected to the gate of the MOS power transistor through a block labeled "Output." Upon information and belief, within these blocks is a circuit that generates a second current of up to 100mA at the output designated GATE_HS. |
| a control circuit, wherein the control circuit enables the first and second gate drive circuits when the MOS power transistor is initially turned on, and thereafter disables the first gate drive circuit after a selected period of time. | The Data Sheet includes a Figure 1 showing the "Principal Building Blocks" of the MC33883. Figure 1 contains a block labeled "Logic" connected through other blocks to the output block. Upon information and belief, within these blocks is a control circuit. |

| Claim 14 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33883 |
|---|---|
| A method for driving a MOS power transistor, comprising the steps of: | As described above in connection with claim 1, the MC33883 drives a MOS power transistor.  When the device operates, it performs a method for driving a MOS power transistor. |
| when the MOS power transistor is turned on, charging a node connected to a gate thereof to a gate supervoltage higher than a positive supply voltage by at least an amount equal to a threshold voltage of the MOS power transistor, utilizing a first charge current to charge the node at a first rate; and | The Data Sheet includes a section called "Device Description."  That description indicates that  the MC33883 generates a first current of up to 1A to charge the gate node. |
| after a predetermined time period, maintaining the voltage on the node at the gate supervoltage utilizing a second charge current, less than the first charge current, to charge the MOS power transistor gate to the gate supervoltage at a at a second rate, wherein said second rate is slower than said first rate. | The Data Sheet includes a section called "Device Description."  That description indicates that  the MC33883 generates a second current of up to 100mA to charge the gate node after a predetermined period of time. |

| Claim 15 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33883 |
|---|---|
| 15. The method of claim 14, wherein said step of charging the node connected to the gate thereof at the first rate comprises charging the node using a first and a second gate drive circuit. | As described above in connection with claim 1, the MC33883 includes a first and second gate drive circuits. |

## EXHIBIT C–3

| Claim 1 of U.S. Patent No. 5,359,244 | |
|---|---|
| Claim Language | Description of where each claim element is found in Motorola's MC33982 and MC33984 |
| A circuit for driving a MOS power transistor, comprising: | Motorola's data sheets, designated "order number: MC33982/D" and "order number: MC33984/D" (herein the "Data Sheets") are the same in relevant respects. FIG. 1 of the Data Sheets pictures a MOS power transistor and circuitry driving it. |
| a first gate drive circuit for charge pumping a node connected to a gate of the MOS power transistor to a gate supervoltage higher than a positive supply voltage by at least an amount equal to a threshold voltage of the MOS power transistor, wherein the first gate drive circuit utilizes a first charge current to charge the MOS power transistor gate to the gate supervoltage at a first rate; | The Data Sheets include a Figure 1 showing the "Simplified Internal Block Diagram" of the Products. Figure 1 contains a block labeled "Selectable Slew Rate Gate Drive" that is connected to the gate of the MOS power transistor. Upon information and belief, within this block is a first gate drive circuit. |
| a second gate drive circuit for charge pumping the node connected to the gate of the MOS power transistor to maintain the voltage on such node at the gate supervoltage, wherein the second gate drive circuit utilizes a second charge current, less than the first charge current, to charge the MOS power transistor gate to the gate supervoltage at a second rate which is slower than the first rate; and | The Data Sheets include a Figure 1 showing the "Simplified Internal Block Diagram" of the Products. Figure 1 contains a block labeled "Selectable Slew Rate Gate Drive" that is connected to the gate of the MOS power transistor. Upon information and belief, within this block is a second gate drive circuit. |
| a control circuit, wherein the control circuit enables the first and second gate drive circuits when the MOS power transistor is initially turned on, and thereafter disables the first gate drive circuit after a selected period of time. | The Data Sheets include a Figure 1 showing the "Simplified Internal Block Diagram" of the Products. Figure 1 contains blocks labeled "Selectable Slew Rate Gate Drive" and a block labeled "Logic". Upon information and belief, within these blocks is a control circuit. |

| Claim 13 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33982 and MC33984 |
| --- | --- |
| The circuit of claim 1, | See description above for claim 1. |
| further comprising means for connecting the gate of the MOS power transistor to ground, wherein the MOS power transistor can be turned off when desired. | The Data Sheets include a FIG. 3 that illustrates that the MOS power transistor can be turned off when desired. Upon information and belief, the Products include a mean for connecting the gate of the MOS power transistor to ground to achieve this result. |

| Claim 14 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33982 and MC33984 |
| --- | --- |
| A method for driving a MOS power transistor, comprising the steps of: | As described above in connection with claim 1, the Products include a MOS power transistor. When the Products operate, they perform a method for driving the MOS power transistor. |
| when the MOS power transistor is turned on, charging a node connected to a gate thereof to a gate supervoltage higher than a positive supply voltage by at least an amount equal to a threshold voltage of the MOS power transistor, utilizing a first charge current to charge the node at a first rate; and | The Data Sheets include a FIG. 2 that indicates when the MOS power transistor is turned on, a charge current charges the gate at a first rate. |
| after a predetermined time period, maintaining the voltage on the node at the gate supervoltage utilizing a second charge current, less than the first charge current, to charge the MOS power transistor gate to the gate supervoltage at a at a second rate, wherein said second rate is slower than said first rate. | The Data Sheets include a FIG. 2 that indicates that after a predetermined period of time, a charge current charges the gate at a second rate, which is slower than the first rate. |

| Claim 15 of U.S. Patent No. 5,359,244 ||
| Claim Language | Description of where each claim element is found in Motorola's MC33982 and MC33984 |
|---|---|
| The method of claim 14, wherein said step of charging the node connected to the gate thereof at the first rate comprises charging the node using a first and a second gate drive circuit. | As described above in connection with claim 1, the Products include a first and second gate drive circuits. |



**Figure 1. 33982 Simplified Internal Block Diagram**