IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STMICROELECTRONICS, INC. | § | |
| Plaintiff | § § § | |
| vs. | § § | |
| MOTOROLA, INC. | § § | CASE NO. 4:03-CV-276 |
| Defendant, Counterclaim Plaintiff | § § § | |
| vs. | § § | |
| STMICROELECTRONICS, N.V., AND STMICROELECTRONICS, INC. | § § § | |
| Counterclaim Defendants | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Motorola, Inc. ("Motorola") has filed a Motion to Enforce Paragraph 3-7 of the Court's Patent Rules (Docket No. 26) for the failure of Plaintiff STMicroelectronics, Inc. ("STM") to timely disclose asserted patent claims and preliminary infringement contentions. In its Opposition to Motorola's Motion to Enforce Paragraph 3-7 of the Court's Patent Rules and, Alternatively, Motion for leave to Supplement Disclosures (Docket No. 29), STM argues that the Court's leave was not required under the local patent rules to supplement its preliminary infringement contentions, and alternatively requests leave to file supplemental disclosures. While Motorola's motion to enforce (Docket No. 26) and STM's motion for leave to supplement (Docket No. 29) were pending, STM filed a second Motion for Leave to Supplement Infringement Contentions (Docket No. 30). The facts being undisputed, and the Court having considered the parties' submissions, the Court

1

**GRANTS** Motorola's motion to enforce (Docket No. 26), **DENIES** STM's two motions for leave to supplement (Docket Nos. 29 and 30), and **STRIKES** STM's supplemental disclosures.

### Background

This discovery dispute arose when STM submitted a supplemental list of asserted claims without the Court's permission more than 30 days after the deadline for disclosing asserted claims. Under this Court's local Patent Rules,[1] "not later than 10 days after the Initial Case Management Conference, a party claiming patent infringement must serve on all parties a 'Disclosure of Asserted Claims and Preliminary Infringement Contentions,'" which contains in part "each claim of each patent in suit that is allegedly infringed by each opposing party." P.R. 3-1. In this case, the Disclosure of Asserted Claims and Preliminary Infringement Contentions ("Disclosure") was due on October 31, 2003. On October 31, when both parties disclosed their contested claims, STM disclosed only two contested claims. On December 4, 2003, more than one month after the Disclosure was due, STM supplemented its Disclosure with 26 new claims for interpretation and without obtaining the Court's leave to do so. Notably, with one exception, STM's supplemental Disclosure concerns the same patents and inventions as the initial Disclosure, and STM does not argue that the supplemental Disclosure was based on information unknown or unavailable before October 31. Because of STM's delay in disclosing its contested claims, Motorola only had 7 days to identify claim terms to be construed in the *Markman* proceeding (normally, Motorola would have had 42 days to identify such claims).

---

[1] The Court adopted its local Patent Rules to facilitate the unique pretrial process involved in patent cases. The Patent Rules "apply to all civil actions filed in or transferred to this Court which allege infringement of a utility patent in a complaint, counterclaim, cross-claim or third party claim, or which seek a declaratory judgment that a utility patent is not infringed, is invalid or is unenforceable." P.R. 1-2.

Subsequently, Motorola filed its Motion to Enforce Paragraph 3-7 of the Court's Patent Rules. Paragraph 3-7 declares: "**Amendment to Contentions.** Amendment or modification of the Preliminary or Final Infringement Contentions. . . may be made only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-7. Motorola argues that STM's late disclosures are invalid under 3-7 because they were made without the Court's leave on a good cause showing. Motorola also argues that STM cannot make a good cause showing because (1) its newly disclosed claims are not based on any information unavailable at the time the disclosures were due, and (2) as the party bringing suit, STM has no excuse for not having a list of asserted claims prepared early in the pretrial process.

Motorola further argues that the late disclosures are prejudicial. First, Motorola claims that STM's delay has compressed Motorola's time to meet pretrial deadlines. Motorola claims that STM's delay left only 7 instead of 42 days to identify claims to be construed for the *Markman* hearing. Even though Motorola was able to identify terms to be construed in the 7 days, it claims that STM's delay has also left it with less time to construct proposed claim constructions and to review the substantial technical information involved in this action. Motorola further argues that this form of prejudice will carry over into all further claim construction deadlines because all of the subsequent construction deadlines are inextricably intertwined with STM's initial Disclosure of infringing claims. Second, Motorola alleges that STM obtained another unfair advantage by waiting to examine Motorola's asserted claims before disclosing its additional list of 26 asserted claims. Here, Motorola alleges that STM's delay is "gamesmanship" which allowed STM to gain unfair advantage by reviewing Motorola's asserted claims before revealing its own.

As noted above, STM has filed two motions for leave to supplement. Generally, the two

3

motions argue that the Court's leave was not required to supplement STM's disclosures, or that STM has made a sufficient showing for leave to amend. To avoid repetition, the Court addresses each argument's specifics as it discusses them *infra*. Despite the fact that STM has conceded that its second motion (Docket No. 30) is tied to the result of the first motion (Docket No. 29), the Court discusses the second motion separately because the second motion's nature leads to a slightly different result.[2]

### Opposition to Motorola's Motion to Enforce Paragraph 3-7 of the Court's Patent Rules and, Alternatively, Motion for leave to Supplement Disclosures (Docket No. 29)

<u>The Patent Rules required STM to obtain the Court's leave</u>

The Court's Patent Rules are a valid exercise of its authority to manage its docket in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Texas. The Court's Patent Rules simply set forth specific schedules for discovery and certain patent-specific pretrial hearings (*e.g. Markman* hearings). Furthermore, every party in a patent case receives actual notice of the Court's Patent Rules because they are attached as an appendix to the Court's scheduling order. It is beyond question that district courts have broad power to control their dockets and enforce their orders. *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) ("The second question challenges the district court's ability to establish and enforce deadlines for the filing of motions and other papers. It is plain that they have, and must have this power."); *Marshall v.*

---

[2] STM declared:
As explained below, the issues relating to this ST INC [STM] motion are intertwined with those in Motorola's Motion to Enforce Paragraph 3-7 of the Court's Patent Rules [Docket No. 26] and ST INC's Opposition to that motion and alternative motion for leave to supplement [Docket No. 29]. Under the reasoning in Motorola's reply brief, the present motion [Docket No. 30] stands or falls with these other motions.
STMicroelectronics, Inc's Reply in Further Support of Its Motion for Leave to Supplement Its Preliminary Infringement Contentions, (Docket No. 46)

4

*Gates*, 44 F.3d 722, 725 (9th Cir. 1995) (finding that local rules may modify filing deadlines found in the Federal Rules of Civil Procedure); *Edwards v. Cass County, Tex.*, 919 F.2d 273, 275 (5th Cir. 1990) ("The district court has broad discretion in controlling its own docket. This includes the ambit of scheduling orders and the like."); *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n. 3 (5th Cir. 1968) ("It is sheer sophistry to argue that the trial court has no inherent power to enforce its rules, orders, or procedures, and to impose appropriate sanctions for failure to comply. The authorities are all to the contrary."). Additionally, Federal Rule of Civil Procedure 83(b) gives district courts the authority to regulate practice in any manner not inconsistent with federal law, the Federal Rules of Civil Procedure, or local rules of the district. Federal Rule of Civil Procedure 6(b) explicitly authorizes the Court's scheduling order to create the Patent Rules' procedures for discovery and motion practice.[3] Finally, because the Court actually provides every litigant with a copy of the Patent Rules, the Court may enforce its rules against the parties notwithstanding Federal Rule of Civil Procedure 83(b).[4]

Importantly, litigants are to read the Patent Rules as controlling exceptions to the Federal

---

[3] In relevant part, Rule 6(b) provides that a district court:
shall. . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings; (2) to file motions; and (3) to complete discovery. The scheduling order may also include (4) modifications of the times for disclosures under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; (5) the date or dates for conferences before trial, a final pretrial conference, and trial; and (6) any other matters appropriate to the circumstances of the case.
FED. R. CIV. P. 6(b).

[4] Rule 83(b) provides:
A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.
FED. R. CIV. P. 83(b).

Rules of Civil Procedure, the local rules of the Eastern District, and other federal law. The Court's Patent Rules are specific exceptions to the normal pretrial procedures that the Court has enacted to effectuate an orderly and efficient pretrial process. When the Patent Rules address a topic, the Patent Rules govern unless the Court has issued a more specific order modifying those rules. STM's argument misses this point.

STM incorrectly argues that it was not required to obtain the Court's leave to amend its disclosures under the Patent Rules because of Federal Rule of Civil Procedure 26(e). STM argues "nor do the federal rules require a party to seek leave of court before supplementing disclosures or discovery responses pursuant to rule 26(e)." Although Federal Rule 26(e) does not require a court's leave to supplement discovery, Federal Rule 16(b) does require a showing of good cause to modify dates set forth in the Court's scheduling order. FED. R. CIV. P. 16(b) (providing in part, "a schedule [scheduling order] shall not be modified except upon a showing of good cause and by leave of the district judge..."). Furthermore, Patent Rule 3-7 incorporates Rule 16(b)'s good cause requirement by stating "amendment or modification of the Preliminary or Final Infringement Contentions... may be made only by order of the Court, which shall be entered only upon a showing of good cause." P.R.3-7. The Patent Rules are part of the Court's scheduling order and therefore STM is required to obtain the Court's leave on a good cause showing to modify the Patent Rules' deadlines. FED. R. CIV. P. 16(b); *Id.*

Additionally, STM incorrectly argues that the "Duty to Supplement" provision of the Court's discovery order relieves it of the duty to comply with the Patent Rules. STM first recognizes that section 2 of the discovery order requires every party to provide "the disclosures required by the court's Patent Rules in accordance with the deadlines set forth in said rules." STM then points to

section 10 of the discovery order which requires each party to "supplement or correct its disclosures immediately" after the party discovers that disclosed information was incomplete or incorrect when made or has become so since made.[5] STM thus argues that it may disregard the Patent Rules' requirement of obtaining Court leave to amend disclosures because of section 10's mandate to immediately supplement. Assuming arguendo that section 10 applies to STM's claim disclosure, STM's mistake is in not reading the rules consistently. Section 10 requires immediate update of disclosed information and the Patent Rules require the Court's leave to supplement. Thus, STM should have immediately sought the Court's leave to supplement when it discovered that its disclosure was incomplete or inaccurate.

STM's good cause arguments are unpersuasive

A party seeking leave to amend a court's scheduling order must show "good cause." FED. R. CIV. P. 16(b); *S&W Enters., L.L.C. v Southtrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003). The "good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C.*, 315 F.3d at 535 (internal quotations omitted). Trial courts have broad discretion to allow scheduling order modifications and should consider four elements when determining whether to allow a modification: (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Id.* at 535-36.

---

[5]Section 10 declares:
**Duty to Supplement.** After disclosure is made pursuant to this order, each party is under a duty to supplement or correct its disclosures immediately if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true.

Additionally, under element one, a party's failure to meet a deadline due to mere inadvertence "is tantamount to no explanation at all." *Id.* at 536.

STM attempts to show "good cause" primarily by arguing that Motorola has suffered no harm. In its Opposition to Motorola's Motion to Enforce Paragraph 3-7 of the Court's Patent Rules and, Alternatively, Motion for leave to Supplement Disclosures (Docket No. 29), STM argues that the Court should grant leave to supplement its infringement contentions because Motorola has suffered no harm. STM argues that its delay caused Motorola no harm because the *Markman* hearing was scheduled five months after the preliminary infringement contentions were due. STM further discounts Motorola's claim that it suffered harm by being forced to identify claims to be construed in only 7 days rather than in 42 days because "Motorola did identify terms to be construed among the newly asserted claims for construction." STM makes almost no attempt to show why the deadlines could not reasonably be met despite STM's own diligence, but rather focuses solely on Motorola's harm.

STM's one statement that attempts to show diligence, rather than lack of harm to Motorola, amounts to no statement at all. In all of the briefing regarding STM's first motion (Docket No. 29), the one sentence that could be construed to explain why STM did not meet the initial deadlines declares: "ST INC promptly supplemented its contentions after its continuing investigation revealed additional infringing products and infringed claims." STMicroelectronics, Inc's Reply in Further Support of Its Motion for Leave to Supplement Its Preliminary Infringement Contentions, p.4 (Docket No. 34). Aside from that one conclusory statement, STM does not explain: what new information its "investigation" revealed that would warrant the additional 26 contested claims; why

its "investigations" did not prepare it to disclose disputed claims when it is the party bringing suit[6]; what diligence it used prior to the disclosure date; or why its diligence was not sufficient. In fact, STM never responds to Motorola's assertion that the 26 new claims are based on the same products, same patents, and same documents as the original 2 claims. Given that the good cause showing unambiguously centers on STM's diligence, the Court finds STM's absolute silence regarding the diligence used telling. In light of these facts, the Court finds that STM has made no showing of diligence used prior to the Disclosure deadline.

STM's briefing does not adequately address the burden it must carry to persuade the Court to modify the docket control order (specifically, the Patent Rules appendix). To meet its good cause burden, STM must show that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C.*, 315 F.3d at 535 (internal quotations omitted). As discussed *supra*, the Court finds that STM has made no showing of diligence. Consequently, the four factors that courts should consider when modifying deadlines do not weigh in STM's favor. *Id.* at 535-36 (finding that trial courts have broad discretion to allow scheduling order modifications and should consider four elements when determining whether to allow a modification: (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice). Against STM's request to modify the Disclosure deadlines are prejudice to Motorola from STM's gamesmanship and from reduced time

---

[6] STM's silence on this factor is particularly disturbing. STM was unquestionably the party in the best position to make the initial Disclosures because it is the party that chose when to bring suit. As the plaintiff, STM controlled when suit was brought and thus, to a certain extent, when the disclosure deadlines began. The fact that STM offers no explanation why it was not prepared to assert contested claims based on information it had *before* it filed suit demonstrates either a lack of diligence in preparing its case or an attempt at gamesmanship as Motorola has alleged.

9

to respond. In contrast, because STM has offered no excuse for its late Disclosures, the only element in favor of allowing STM's late Disclosure is the importance of 26 additional claims to its case.[7] Even though the harm to STM in this case may be substantial, the Court cannot allow parties to ignore its orders, deadlines, and pretrial practices without any explanation. STM simply has not provided the Court with anything to balance against Motorola's asserted harm. The Court denies STM's motion for leave to supplement because STM has not carried its burden of showing diligence.

Additionally, it is worthy to note that STM's argument would largely render Patent Rule 3-7, and accordingly Federal Rule 16(b), a nullity. Essentially, STM's argument is that because the Disclosures are due long before the *Markman* proceeding a party need only obtain the Court's leave to submit them after the deadline if they are so grossly late as to run near the *Markman* hearing date. According to STM, so long as the Disclosures are not submitted near the *Markman* date, the opposing party will suffer no harm and thus the submitting party may ignore Patent Rule 3-7. The Court will not allow litigants to so ignore its orders. The Patent Rules, as a part of the Court's docket control order, are an order of this Court that litigants are not free to ignore. Patent Rule 3-7 clearly mandates that "amendment or modification of the Preliminary or Final Infringement Contentions... may be made only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-7. Once STM missed the Disclosure deadlines set forth in Patent Rule 3-1,

---

[7]The Court does not address the continuance element because the parties have not briefed the issue of whether a continuance may cure prejudice to Motorola. This issue is somewhat different than most discovery disputes because the Patent Rules set forth a series of disclosure dates creating an orderly progression of information exchange and briefing which is necessary to manage complex patent cases. The Patent Rules disclosure dates are all interrelated and thus a continuance of one date may be insufficient to cure any prejudice. Indeed, Motorola has argued that STM's one month delay will cause prejudice throughout the pretrial. Without briefing by the parties, the Court is unable to say whether, in this case: a continuance of one deadline would cure; only a continuance of most deadlines would cure; or no continuance could cure Motorola's alleged harm.

it was required to obtain a court order based on good cause to amend. [8]

**STM's second Motion for Leave to Supplement Infringement Contentions (Docket No. 30)**

STM's second motion for leave to supplement (Docket No. 30) is an ambiguous motion that is largely duplicative of its first motion for leave to supplement. Unlike STM's first motion which sought to identify new contested claims based on the same documents and information available when the initial claim Disclosures were due, STM's second motion apparently seeks to add additional Motorola products discovered during ongoing discovery. However, exactly what STM's second motion seeks to add is unclear to the Court. Despite the motion's declaration that "in this motion, ST INC seeks leave of Court to supplement its preliminary infringement contentions to identify additional Motorola products that infringe the ST INC patents-in-suit,"[9] STM never identifies what new products it would like to add.[10] Additionally, STM's second motion makes the same arguments for leave to supplement as its first motion. STM's arguments are almost exactly the same as the original motion in that they do not address the diligence used and why said diligence was insufficient. Moreover, Motorola's responses are almost identical to those filed against STM's first

---

[8]The Court notes that counsel for STM made a correct and observant statement in a letter to Motorola's counsel dated November 26, 2003 and attached to the instant motion as exhibit E:
> I do not believe that these rules [the Patent Rules] should be applied in a purely rigid and mechanistic fashion, as you [counsel for Motorola] propose. There are often circumstances and situations that require more flexibility or reasonable behavior, and it will remain only for Judge Davis to determine when and whether such reason and flexibility would be warranted.

Counsel is correct in his assertion that the Patent Rules are to be applied flexibly and with consideration of the realities of trial practice. However, counsel is also correct that it is for the Court to modify its orders. Where an order should be modified in light of case-specific facts, the parties must obtain the Court's leave to do so. Parties are not free to simply disregard the Court's deadlines.

[9]STMicroelectronics, Inc.'s Motion for Leave to Supplement Preliminary Infringement Contentions (Docket No. 30), p. 2.

[10]Instead, STM attaches a 199 page appendix of claim infringement charts with no guidance for the Court as to which parts are new and old. Even if the Court had the original claim infringement charts, without guidance from the parties, it would not be inclined to compare the 199 page appendix to the original in an attempt to discern what STM sought to add.

motion for leave to supplement. Indeed, as noted *supra*, STM concedes that the outcome for the second motion should be the same as the first.

Despite STM's concession, the Court finds cause to deny the second motion on different grounds than the first and accordingly to grant STM leave to refile. The fact that the second motion is possibly based on new information obtained during discovery leaves open the possibility that STM discovered new information during discovery which, despite all possible diligence, was not available when the Disclosures were originally due.[11] If that is the case, then the Court may find that STM's motion is based on good cause. However, as previously discussed, the second motion does not address the good cause standard and is otherwise vague. Although the Court cannot grant the second motion because of its deficiencies, the Court would grant a litigant the opportunity to show good cause where it appears that the litigant may be able to do so. Therefore, the Court denies STM's second motion without prejudice to refile.

## Conclusion

In conclusion, the Court **GRANTS** Motorola's Motion to Enforce Paragraph 3-7 of the Court's Patent Rules (Docket No. 26); **DENIES** STM's Opposition to Motorola's Motion to Enforce Paragraph 3-7 of the Court's Patent Rules and, Alternatively, Motion for leave to Supplement Disclosures (Docket No. 29); and **STRIKES** STM's first supplemental Disclosure. Additionally, the Court **DENIES** STM's Motion for Leave to Supplement Infringement Contentions (Docket No. 30) **WITHOUT PREJUDICE** to refile with greater clarity and a showing of good cause. If STM

---

[11] Distinguish this possible situation from that which exists in STM's first motion. There, according to STM's silence in the face of Motorola's arguments, STM's supplemental disclosures were based on the same documents and information that was already available when the Disclosures were initially due. STM provided no explanation why it could not have sufficiently examined those documents before disclosures were due despite its diligence.

reurges its second motion, it may not reurge any items raised in the first motion.

The Court stresses that it is sensitive to the realities of trial practice, and is willing to liberally grant parties time extensions when warranted. However, the Court's sensitivity to the realities of trial practice also make it aware that a filing/submission delay which suggests gamesmanship and leaves opposing counsel only one sixth of the time normally allotted to respond can be prejudicial. Furthermore, the Court will not allow litigants to ignore its orders. Parties are not free to disregard rules of procedure or orders of this Court that require leave to amend or supplement.

**SIGNED** and **ORDERED** this ___10th___ day of March, 2004.

LEONARD DAVIS
**UNITED STATES DISTRICT JUDGE**