01 SEP -1 PM 1: 32

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| STMICROELECTRONICS, INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:03-CV-276 |
| | § | |
| v. | § | Judge Leonard E. Davis |
| | § | |
| MOTOROLA, INC., | § | Jury Trial Demanded |
| | § | |
| Defendant, | § | |
| Counterclaim Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| STMICROELECTRONICS, N.V., and | § | |
| STMICROELECTRONICS, INC., | § | |
| | § | |
| Counterclaim | § | |
| Defendants | § | |

## ORDER

On August 23, 2004, the following Motions and Requests filed by Motorola, Inc.

and Freescale Semiconductor, Inc. (collectively, "Motorola") and STMicroelectronics, Inc. ("ST

INC") and STMicroelectronics, N.V. ("ST NV") (collectively, "ST Parties") were considered by

the Court:

     (A)    Defendant Motorola, Inc.'s Motion to Modify Protective Order Due to Objections by Motorola's Licensees Pursuant to July 15 Rulings (Docket No. 182);

     (B)    Defendant Motorola, Inc.'s Supplemental Motion to Modify Protective Order Due to Objections by Motorola's Licensees (Docket No. 194);

     (C)    Motorola's Request for Attorneys' Fees (Docket No. 188);

     (D)    The ST Parties' Emergency Motion to Enforce Motorola's Compliance with July 12 Order and Discovery Orders; for Leave to Supplement Expert Reports and Final Infringement Contentions; and to Compel (Docket No. 191);

(E)     Motorola's and Freescale's Motion for Protective Order from 30(b)(6) Depositions re Contentions (Docket No. 205); and

(F)     Cross-Motion to Compel Outstanding Discovery by Motorola, Inc. (Docket No. 204).

Having considered the motion papers, opposition briefs, reply briefs, and arguments of counsel on the issues raised by said Motions and Requests, the Court's rulings are set out below.

**A.     Defendant Motorola, Inc.'s Motion to Modify Protective Order Due to Objections by Motorola's Licensees Pursuant to July 15 Rulings (Docket No. 182) and Defendant Motorola, Inc.'s Supplemental Motion to Modify Protective Order Due to Objections by Motorola's Licensees (Docket No. 194)**

The Court GRANTS the above motion [Docket No. 182] and supplemental motion [Docket No. 194] and hereby ORDERS that ST INC's and ST NV's' "in-house" counsel identified in paragraphs 6(e) and 6(f) of the Protective Order [Docket No. 40] shall not be authorized to have access to license agreements produced by Motorola in this action entered into between Motorola and Toshiba Corp., Philips Semiconductor, B.V., Seiko Epson Corp./Suwa Seikosha, or Tower Semiconductor. Nothing in this Order shall prevent the in-house counsel restricted above from having access to expert reports or other documents or testimony incorporating or referring to information from the licenses identified above, such restriction being limited only to access to the licenses themselves. The Court further directs Motorola to submit an affidavit of attorneys' fees with respect to the preparation of both motions by September 3, 2004. The ST Parties shall file any response by September 13, 2004. The ST Parties may supplement their expert reports with respect to information contained in the above license agreements.

**B.    Motorola's Request for Attorneys' Fees (Docket No. 188)**

The Court GRANTS Motorola's Request for Attorneys' Fees [Docket No. 188] in the

amount of $45,000.  The ST Parties are furthered ORDERED to pay said amount by September

7, 2004.

**C.    The ST Parties' Emergency Motion to Enforce Motorola's Compliance with July 12 Order and Discovery Orders; for Leave to Supplement Expert Reports and Final Infringement Contentions; and to Compel (Docket No. 191)**

The Court GRANTS and DENIES, in part, the above motion [Docket No. 191] and

hereby ORDERS as set out below.

**Edwards Patent (U.S. Patent No. 5,031,092)**

Based on Motorola's representations made in writing and during the hearing, the Court

finds that Motorola is in compliance with the July 12, 2004 Order with respect to the

Edwards patent.  The Court further orders that:

(1)    For the following products, Motorola shall produce by September 7, 2004 the
documents and electronic databases identified in paragraphs 1(a) and 1(b) below.

> MC908AS60A; MC908AZ60A; MC68HC08AZ60; MC68HC908AP32;
> MC68HC908AP64; MC68HC9081D64; MC9S08GB32; MC9S08GB60;
> MC9S08GT32; MC9S08GT60; MC9S08RC32; MC9S08RC60;
> MC9S08RD32; MC9S08RD60; M0S0WE32; MC9S08RE60;
> MC912D60A; XC68HC12D60; MC912DG128A; MC68HC912DT128A;
> MC9S12A128; MC9S12D32; MC9S12A512; MC9S12A64;
> MC9S12C32; MC9S12D32; MC9S12D64; MC9S12DJ64;
> MC9S12DB128; MC9S12DG128; MC9S12DJ128; MC9S12D512;
> MC9S12DT128; MC9S12A256; MC9S12DG256; MC9S12DJ256;
> MC9S12DP256; MC9S12DT256; MC9S12E64; MC9S12E128;
> MC9S12H128B; MC9S12H256B; MC9S12T64; MC56F8356VFV60;
> MC56F8356MFV60; MMC2103; MMC2107; MMC2113; MMC2114;
> MPC533; MPC534; MPC535; MPC536; MC9S12DG128B; MC68040;
> MC68EC040; MC681C040; MC68040V; MC68060; MC68EC060;
> MC68LC060; MC68EZ328; MC68VZ328; MC68SZ328; MC9328MX1;
> MC9328MXL; MC9328MX21; MPC5200; MPC823E; XPC107A;
> MPC603R; XPC745B; MPC755B; MPC755C; XPC8240; MPC8241;
> MPC8245; MPC8245A; XPC823; XPC850; XPC850DE; XPC850SR;
> XPC850DSL; MPC859T; MPC859P; MPC859DS1; MPC852T;

XPC855T; XPC857T; XPC857DSL; MPC866P; MPC866T; XPC860DE;
XPC860DP; XPC860DT; XPC860EN; XPC860P; XPC860SR; XPC860T;
XPC832DT; XPC862P; X.PC862SR; XIPC862T; MPC870; NeC875;
MPC880; MPC885; MPC823; MPC823E; MPC850; MPC850DE;
MPC850DSL; MPC852T;MPC855T; MPC857T; MCPC857DSL;
MPC859T; MPC859DSL,; MPC860DE; MPC860DP; MPC860DT;
MPC860EN; MPC860P; MPC860SR; MPC860T; MPC862DT;
MPC862P; MPC862SR; MPC862T; MPC866T; MPC866P; MPC870;
MPC875; MPC880; MPC885; MPC8247; MPC8248; XPC8255;
XPC8260; MPC8250A, MPC8255A; MPC8260A; MPC8264A;
MPC8265A; MPC8266A; MPC8271; MPC8272; MPC8247; MPC8248;
MPC8250; MPC8255; MPC8260; MPC8264; MPC8265; MPC8266;
MPC8270; MPC8271; MPC8272; MPC8275; MPC8280;
DSPBS6366PV120; DSPB56366AG120; DSPA56367PV150;
DSPA56367AG150; DSPB56367PV150; DSPB56367AG150;
DSPC56367PV150; DSPD56367PV150; DSPD56367PV150;
DSPD56367AG150; DSPA56371AF180; DSP56301VF80;
DSP56301VF100; DSP56301PW80; DSP56301PW100;
DSP56303VF100; DSP56303PV100; XC56309VF100A;
XC56309PV100A; XC561307VF160; DSP56311VF150;
MSC81011250C; MSC810IM1375C; MSC8103M1100;
MSC8103M1200; MVME210, MVME5100, MVME5500, MVME6100,
MCP820, MCPN765, PrPMC610, PrPMC800, PrPMC880, MCIP805,
PVRB672.

The documents and electronic databases to be produced pursuant to this

paragraph are:

(a)   GDSII file and layer list for one product selected by the ST Parties from
      each grouping of products identified in Exhibit A attached hereto. For
      each of the selected products, the ST Parties can rely on the selected
      GDSII file and layer list for the selected product as being representative of
      the GDSII file and layer list for all products in that product group.

(b)   User manuals and data sheets for each product identified in paragraph 1
      above.

Motorola shall further provide a correlation of each Motorola Product referenced

in Paragraph 1 to the documents required to be produced pursuant to paragraph 1 of this

Order; the correlation for these products will be the same type of correlation as Motorola

has previously provided for the other Edwards products.

(2)   To the extent not already produced:

4

    (a)     Motorola shall produce, by September 7, 2004, sales information on a monthly basis (units sold and revenue in dollars) for all products identified in the expert reports of Hoffman and/or Malackowski as infringing the Edwards patent and for all products identified in paragraph 1 (collectively the "Edwards Products") that are made or sold in the U.S.

    (b)     Motorola shall produce, by September 17, 2004, sales information on a monthly basis (units sold and revenue in dollars) for all products incorporating the Edwards Products.

    (c)     By September 17, 2004, Motorola shall identify in writing the products that incorporate the Edwards Products, and shall identify which Edwards Product is incorporated in the product identified under this sub-paragraph.

(3)    Motorola stipulates that when there is more than one version of a GDSII file and layer list for an Edwards Product, the ST Parties can select any version of the GDSII file and layer list for that product and use it for their infringement analysis as being representative of all versions of the GDSII files and layer lists for that product.

**Hopkins Patent (U.S. Patent No. 5,359,244)**

(4)    Based on Motorola's representations made in writing and during the hearing the Court finds that Motorola is in compliance with the July 12, 2004 Order with respect to the Hopkins patent. The Court further Orders that Motorola shall produce, by September 7, 2004, the documents identified in paragraph 4(a)-4(c) below for devices that meet any of the following criteria: (A) the device contains at least one internal power transistor and has a controllable output voltage slew rate; or (B) the device has a TMOS or other power MOSFET gate driver that provides a controllable slew rate.

The documents to be produced pursuant to this paragraph are:

(a)    Circuit schematics;

(b)    Data sheets; and

(c)    User manuals

Motorola shall further provide a correlation of each Motorola Product identified under paragraph 4 to the documents required to be produced pursuant to paragraph 4 of this Order; the correlation for these products will be the same type

of correlation as Motorola has previously provided for the other Hopkins products.

(5)   To the extent not already produced:

   (a)   Motorola shall produce, by September 7, 2004, sales information on a monthly basis (units sold and revenue in dollars) for all products identified in the expert reports of Gosney and/or Malackowski as infringing the Hopkins patent and devices that meet the criteria in paragraph 4 (collectively the "Hopkins Products") that are made or sold in the U.S.

   (b)   Motorola shall produce, by September 17, 2004, sales information on a monthly basis (units sold and revenue in dollars) for all products incorporating the Hopkins Products.

   (c)   By September 17, 2004, Motorola shall identify in writing the products that incorporate the Hopkins Products, and shall identify which Hopkins Product is incorporated in the product identified under this sub-paragraph.

**Diaz Patent (U.S. Patent No. 5,812,789)**

(6)   To the extent not already produced, Motorola shall produce, by September 7, 2004, for the HDT100, HDT101, HDT300 and HDT500R set top boxes, the following documents and electronic databases:

   (a)   All HDL, RTL, netlists, VHDL and Verilog code in electronic form including all libraries and code for each cell, submodule, entity, gate, etc., technical specifications, block diagrams, application notes, instruction sets and schematics. Motorola will be required to provide the same type of correlation for these products as it has previously provided for other Diaz products.

   (b)   All platform specifications;

   (c)   All schematics;

   (d)   All hardware high level definition ("HLD") architectural documents;

   (e)   All software HLD architectural documents;

   (f)   All software source codes (provided in human readable and electronically searchable format using a programming language including, without limitation, C, assembly, and/or any other codes, formats, specifications, and programming languages); and

   (g)   All test data relating to memory access.

6

(7)     To the extent not already produced, Motorola shall obtain and produce, by
        September 7, 2004, for each Broadcom chip used within the HDT100, HDT101,
        HDT300 and HDT500R set top boxes, the following:

    (a)     All HDL, RTL, netlists, VHDL and Verilog code (including that
            associated with the manner in which the Broadcom devices share memory
            within the Motorola set top boxes) in electronic form, including all
            libraries and code for each cell, submodule, entity, gate, etc., technical
            specifications, block diagrams, application notes, instruction sets and
            schematics.   Motorola will be required to provide the same type of
            correlation for these products as it has previously provided for other Diaz
            products.

    (b)     Guides, manuals, and software provided by Broadcom to Motorola;

    (c)     All user's guides and/or manuals;

    (d)     Design user guides;

    (e)     All schematics; and

    (f)     All software source code (provided in human readable and electronically
            searchable format using a programming language including, without
            limitation, C, assembly, and/or any other codes, formats, specifications,
            and programming languages).

(8)     To the extent not already produced, Motorola shall produce, by September 7,
        2004, for each non-Broadcom chip used by Motorola to decode compressed video
        signals used within the HDT100, HDT101, HDT300 and HDT500R set top boxes,
        the following:

    (a)     All HDL, RTL, netlists, VHDL and Verilog code (including that
            associated with the manner in which the devices share memory within the
            Motorola set top boxes) in electronic form, including all libraries and code
            for each cell, entity, gate, etc., technical specifications, block diagrams,
            application notes, instruction sets and schematics. Motorola will be
            required to provide the same type of correlation for these products as it has
            previously provided for other Diaz products.

    (b)     All user's guides and/or manuals;

    (c)     All schematics; and

    (d)     All software source code (provided in human readable and electronically
            searchable format using a programming language including, without
            limitation, C, assembly, and/or any other programming language).

7

If the information falling under this paragraph is third-party confidential information, Motorola will notify the third-party by August 31, 2004 about this Order and the third-party will have until no later than September 7 to seek relief from this Court. If there is no relief sought by the third-party by September 7, 2004, Motorola shall produce the information the following day.

(9)     Subject to the provision of paragraph 10, Motorola shall produce, by September 10, 2004, for any cellular phones made or sold in the United States between July 2002 and November 1, 2004, that includes a decoder and another device that shares access to memory using an arbiter, as well as for all cell phones (i) identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent, and (ii) made or sold in the U.S. between July 2002 and November 1, 2004, the following documents:

    (a)     All software source code (provided in human readable and electronically searchable format using a programming language including, without limitation, C, assembly, and/or any other programming language) for software for: any decoder, any device that shares memory with a decoder using an arbiter; any memory controller; and any arbiter of each phone.

(10)    Any source code produced under Paragraph 9 above will be available for inspection at the facilities of a software escrow agent. If the parties are not able to agree to the terms for escrow, inspection, and copying of the source code identified in paragraph 9, the parties will seek resolution from the Court on this issue.

(11)    Based on Motorola's representations as set forth in the transcript for the August 23, 2004 Status Conference, and to the extent not otherwise addressed in paragraphs 6-9 of this Order, the Court denies Paragraphs 7-10, 13, 19, and 25 of that Proposed Order .

(12)    The ST Parties and Motorola agree to produce the best available copy of any schematics that are identified by the requesting party as illegible.

(13)    Motorola shall produce, by September 7, 2004, legible copies of the e-mail provided under MOT-S 306125 through 311723 with the attachments in human readable and electronically searchable format reproduced using the program used to create such attachments.

(14)    To the extent not previously provided, Motorola shall produce by September 10, 2004, sales information for the products identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent on a monthly basis (units sold and revenue in dollars), and for the products identified by the ST Parties pursuant

8

to the Court's July 23, 2004 Order on the basis provided for by that Order, from July 2002 for the following products:

    (a)    each baseband processor and/or application processor that is included in a cell phone identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent, which is sold in the United States from July 2002 up to November 1, 2004;

    (b)    each set top box identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent and those identified by the ST Parties pursuant to the Court's July 23, 2004 Order, which is sold in the United States prior to November 1, 2004;

    (c)    each application processor identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent and those identified by the ST Parties pursuant to the Court's July 23, 2004 Order, which is sold in the United States prior to November 1, 2004;

    (d)    each baseband processor identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent and those identified by the ST Parties pursuant to the Court's July 23, 2004 Order, which is sold in the United States prior to November 1, 2004; and

    (e)    each cell phone identified in the expert reports of Kia and/or Malackowski as infringing the Diaz patent and those identified by the ST Parties pursuant to the Court's July 23, 2004 Order, which is sold in the United States prior to November 1, 2004.

### Other Items

(15)    For implementing or embodying products Motorola identified in its P.R. 3-1(f) disclosures, Motorola shall, to the extent not already produced, produce by September 7, 2004, all HDL, RTL, netlists, VHDL and Verilog code in electronic form, including all libraries and code for each cell, submodule, entity, gate, etc., technical specifications, block diagrams, applications notes, instruction sets and schematics. The Court accepts counsel's representation that Motorola has produced the requested information.

(16)    Motorola shall provide supplemental responses to interrogatories pursuant to the Stipulation executed by the parties on August 23, 2004.

(17)    Motorola and the ST Parties shall provide an identification of the full directory path (or path within an archived file) for the top-level module or entity for each of the products for which code has been previously provided by August 31, 2004. Any party producing source code in the future shall also include such information contemporaneously with the produced code.

(18)   From this point forward, the ST Parties are entitled to 20 hours of deposition time for use on any topic related to fact discovery. Such time does not include fact discovery on willfulness topics, which shall go forward independently.

(19)   The ST Parties and Motorola agree to produce the native format version of any documents whose native format was in electronic form. The requesting party must identify the documents for which it seeks production of the native format.

(20)   As to any other relief sought in the Proposed Order submitted by the ST Parties with Docket No. 191 that is not addressed herein, the ST Parties' motion is denied.

**D.    Motorola's and Freescale's Motion for Protective Order from 30(b)(6) Depositions re Contentions (Docket No. 205)**

The Court DENIES Motorola's Motion [Docket No. 205]. The Court further directs the

ST Parties to submit an affidavit of attorneys' fees with respect to the preparation of its

opposition to this motion by September 3, 2004 and Motorola to file any response by September

13, 2004.

**E.    Cross-Motion to Compel Outstanding Discovery by Motorola, Inc. (Docket No. 204)**

The Court GRANTS and DENIES, in part, the above motion [Docket 204] and hereby ORDERS as follows:

(1)   From this point forward, Motorola is entitled to 15 hours of deposition time to address the topics listed below (such time does not include fact discovery on willfulness topics, such as those already noticed by each party, which shall go forward independently):

    (a)   Topic 5 of Motorola's Second Notice to ST INC;

    (b)   Topic 6 of Motorola's Second Notice to ST NV;

    (c)   Topics 8, 13, 23-31 and 36 of Motorola's Third Notice to ST INC;

    (d)   Topics 8, 13, 23-31 and 36 of Motorola's Third Notice to ST NV;

    (e)   Topics 1-3, 11-16, 18 and 31 of Motorola's Fifth Notice to ST INC; and

    (f)   Topics 1-3, 11-16, 18 and 31 of Motorola's Fifth Notice to ST NV.

(2)   ST INC and ST NV shall produce Quan related documents and other discovery as follows:

(a)    ST INC and ST NV represent and confirm that (1) documents STNMS081912-STNMS08913 apply to ST's PBGA products and (2) that document STNMS081918 applies to ST's VFBGA products. ST INC and ST NV shall, by September 7, 2004, also produce the ST Parties' internal version of STNMS08918, if it exists, and all measurements from mold suppliers, if such information exists.

(b)    ST INC and ST NV represent and confirm in response to Motorola's letter of August 20, 2004 that the flow charts, marked as Exhibit 817 (Muar Stacked BGA line), Exhibit 818 (Muar BGA autoline), and Exhibit 819 (Muar Chrysler line), describe a "matrix cavity molding" process.

(c)    ST INC and ST NV shall provide, by September 7, 2004, substrate sizes used on the following lines: Exhibit 813 (Muar BGA line), Exhibit 815 (Shenzhen BGA line), Exhibit 817 (Muar Stacked BGA line), Exhibit 818 (Muar BGA Autoline), and Exhibit 819 (Muar Chrysler line).

(d)    ST INC and ST NV will use their best efforts to obtain information about matching BGA substrate sizes to commercial products by August 30, 2004, and promptly notify Motorola by August 30, 2004 if this information cannot be obtained within that time frame. ST INC and ST NV will produce this information by September 7, 2004, if it exists.

(e)    Produce a witness to testify about warpage measurements for each accused product and all documents relating thereto. The documents shall be produced in hard copies in the United States by September 7, 2004, along with adequate information on how to trace through to get the accused products linked up, in the form as close to what Motorola has asked for, (i.e. an identification of each accused product to which each document pertains), that the ST Parties can do without doing the work for Motorola.

(f)    Motorola can supplement its expert reports on the Quan patent based upon such documents, information, and testimony covered by this paragraph.

(3)    ST INC and ST NV represent that the epitaxial specification and substrate specification reported on STNMS024281 are representative of all of the accused RF LDMOS devices. ST INC and ST NV agree that for each RF LDMOS device for which more than one revision of a process flow has been correlated, Motorola can use any one of the revisions as representative of all the revisions of that process flow. It is Motorola's burden to decompress and access the information in the computer files on STNMS CDs 123-131 and 153-166, and thereafter advise the Court if Motorola needs additional time to amend its infringement contentions based on the information therein. In that regard, the parties note the following exchange: Court: Ya'll need to spend the money to decompress them and the time to decompress them and tell me what relief you need, if any, with regard to the time. Do you need any relief? Can you get it done in time? Mr. Witcoff: I don't believe we will. What I suggest is let me talk to our expert – our vendor again,

get a time frame. I've been told several weeks. We will need some relief from the time, Your Honor. If they want to amend their infringement contentions on these products, we are going to need some relief with time. Court: I'm not sure we're going to start amending infringement contentions at all, but we'll leave that for another day. But it's your burden. You spend the money and get them decompressed.

(4)     Paragraphs 5(b) and 5(c) from Motorola's Proposed Order submitted with Docket No. 204 are denied.

(5)     ST INC and ST NV, shall, by September 7, 2004, provide all outstanding Vaglica related documents and other discovery, including:

    (a)     All standard cell libraries and complete RTL for all Vaglica-accused products, including but not limited to: identification of all top-level modules, RTL for all cores, RTL for all design submodules for ST products containing an Orpheus core, and RTL for all design submodules for ST products containing a Super10 core.

    (b)     All code and documents, including complete RTL, relating to several additional line codes and/or product designations corresponding to ST products newly identified as using an ARM core including: C15803, D15803, P15803, DCA503, ST20196, I13603, I14603, MU2103, C15603, V41303, STw2400, STw5100, STLC1510, STLC2400.

    (c)     All code and documents, including complete RTL, relating to an additional line codes corresponding to an ST product newly identified as using an Orpheus core, V336.

    (d)     All code and documents, including complete RTL, relating to several additional line codes corresponding to ST products newly identified as using a Super10 core including: V93003 and V93103.

    (e)     Documents identified by Luciano Raimondi during his deposition on July 12-13, 2004, including:

        (i)     the contents of the database containing IP ARM blocks including the following categories of documents: layouts and CDL Netlists for at least the ARM7TDMI and ARM720T cores; Verilog RTL code and synthesis scripts for the ARM7, ARM9 and ARM11 families of synthesizable cores; and an ARM bar integration/design kit.

        (ii)     copies of ST's contract with ARM in July 1998 and the follow-up license agreement in 1999.

        (iii)     documents relating to products using an ARM core including: die "bonding" information; product "architecture" information; and

documents relating to development boards and/or kits for individual products.

(iv)  GDSII tape relating to the DCA503 line code.

(v)  the cell libraries used by ST "to perform the mapping of an HDL, VHDL or RTL design on a process" which are kept by ST in a different repository than the project databases.

(vi)  various ARM-related documents, including: the implementation guide for the ARM946ES core; the "macro data sheets" and "views" used to integrate ARM cores into ST products; data sheets and technical reference manuals for each ARM core, including those not already produced to Motorola, e.g., all versions of the data sheets for the ARM946ES, ARM720T & ARM7TDMI-S and all versions of the technical reference manual for the ARM710T; and ARM's architecture reference manuals.

(6)  ST INC and ST NV shall provide supplemental answers to interrogatories pursuant to the Stipulation executed by the parties on August 23, 2004.

(7)  The relief sought in paragraph 9 of the Revised August 23 Proposed Order submitted with Docket No. 204 is DENIED.

(8)  ST INC and ST NV shall produce, by September 7, 2004, all factual information and technical documents relating to the operation, design, use and/or development of any ARM core identified in Motorola's infringement contentions ("ARM Information") provided in connection with this litigation or the Vaglica patent by ARM Limited to either one of the ST Parties or their representatives and any ARM Information provided in connection with this litigation or the Vaglica patent by either of the ST Parties or their representatives to any expert or consultant in this action.  This does not include any legal opinions, advice, or other matters protected by the attorney-client, work product, and/or common interest privilege.

(9)  ST INC and ST NV will not seek damages for the sale of any products by Motorola prior to July 10, 2002, per the agreement reached by parties in a letter from Michael E. Jones to Leozino Agozzino dated August 18, 2004.

(10)   ST INC and ST NV shall provide all complete data sheets, hardware specifications of any kind, software specifications of any kind, RTL, VHDL (Compass database identified by Alain Artieri), Verilog code, source code, machine code and/or the contents of the memory controller ROM for the STi 3500, 3500a, 3520, 3520a and 3240 within five (5) days.

F.   Miscellaneous

(1)   To the extent not otherwise addressed in this Order, all parties may supplement their expert reports to address new information and/or documents provided pursuant to this order.

*August 30, 2004*

Judge Leonard Davis
United States District Judge

# EXHIBIT A[1]

| | |
|---|---|
| 1. | MC908AS60A; MC908AZ60A; MC68HC08AZ60; MC68HC908AP32; MC68HC908AP64; MC68HC9081D64; MC9S08GB32; MC9S08GB60; MC9S08GT32; MC9S08GT60; MC9S08RC32; MC9S08RC60; MC9S08RD32; MC9S08RD60; M0S0WE32; MC9S08RE60 |
| 2. | MC912D60A; XC68HC12D60; MC912DG128A; MC68HC912DT128A; C68HC912DT128A; MC9S12A128; MC9S12D32; MC9S12A512; MC9S12A64; MC9S12C32; MC9S12D32; MC9S12D64; MC9S12DJ64; MC9S12DB128; MC9S12DG128; MC9S12DJ128; MC9S12D512; MC9S12DT128; MC9S12A256; MC9S12DG256; MC9S12DJ256; ~~MC9S12DP256; MC9S12DT256; MC9S12E64;~~ MC9S12E128; MC9S12H128B; MC9S12H256B; MC9S12T64; MC9S12DG128B |
| 3. | MC56F8356VFV60; MC56F8356MFV60 |
| 4. | MMC2103; MMC2107; MMC2113; MMC2114 |
| 5. | MPC533; MPC534; MPC535; MPC536 |
| 6. | MC68040; MC68EC040; MC681C040; MC68040V; MC68060; MC68EC060; MC68LC060 |
| 7. | MC68EZ328 |
| 8. | MC68VZ328 |
| 9. | MC68SZ328 |
| 10. | MC9328MX1 |
| 11. | MC9328MXL |
| 12. | MC9328MX21 |
| 13. | MPC5200 |
| 14. | MPC823E |
| 15. | XPC107A |
| 16. | MPC603R |
| 17. | XPC745B; MPC755B; MPC755C |
| 18. | XPC8240; MPC8241; MPC8245; MPC8245A; MPC8247; MPC8248; XPC8255; XPC8260; MPC8250A; MPC8255A; MPC8260A; MPC8264A; MPC8265A; MPC8266A; MPC8271; MPC8272; MPC8247; MPC8248; MPC8250; MPC8255; MPC8260; MPC8264; MPC8265; MPC8266; MPC8270; MPC8271; MPC8272; MPC8275; MPC8280 |
| 19. | XPC850; XPC850DE; XPC850SR; XPC850DSL; |

---

[1] This chart does not confirm the accuracy of ST's identification of products in that there may be typographical errors, the products may not exist, and/or be mislabeled

|  | |
|---|---|
|  | MPC850; MPC850DE; MPC850DSL; MPC852T; MPC855T; MPC857T; MCPC857DSL; XPC857T; XPC857DSL; MPC859T; MPC859P; MPC859DS1; MPC859DSL |
| 20. | XPC860DE; XPC860DP; XPC860DT; XPC860EN; XPC860P; XPC860SR; XPC860T; MPC860DE; MPC860DP; MPC860DT; MPC860EN; MPC860P; MPC860SR; MPC860T; MPC862DT; MPC862P; MPC862SR; MPC862T; XPC862P; X.PC862SR; XIPC862T; MPC866T; MPC866P |
| 21. | XPC823; MPC823; MPC823E |
| 22. | XPC832DT |
| 23. | MPC870; MPC875; NeC875 |
| 24. | MPC880; MPC885 |
| 25. | DSPBS6366PV120; DSPB56366AG120; DSPA56367PV150; DSPA56367AG150; DSPB56367PV150; DSPB56367AG150; DSPC56367PV150; DSPD56367PV150; DSPD56367PV150; DSPD56367AG150; DSPA56371AF180; DSP56301VF80; DSP56301VF100; DSP56301PW80; DSP56301PW100; DSP56303VF100; DSP56303PV100; XC56309VF100A; XC56309PV100A; XC561307VF160; DSP56311VF150 |
| 26. | MSC81011250C; MSC810IM1375C; MSC8103M1100; MSC8103M1200 |
| 27. | MVME210 |
| 28. | MVME5100 |
| 29. | MVME5500 |
| 30. | MVME6100 |
| 31. | MCP820 |
| 32. | MCPN765 |
| 33. | PrPMC610 |
| 34. | PrPMC800 |
| 35. | PrPMC880 |
| 36. | MCIP805 |
| 37. | PVRB672 |